HONIGMAN MILLER SCHWARTZ AND COHN LLP
I. W. Winsten (P30528)
Judy B. Calton (P38733)
Douglas Salzenstein (P59288)
Marcia Bennett Boyce (P67584)
2290 First National Building
660 Woodward Avenue
Detroit, MI 48226-3506
Telephone: (313) 465-7344
Facsimile: (313) 465-7345
Email: jcalton@honigman.com

Attorneys for Defendants Affinia Group Holdings, Inc.,
Affinia Canada Corp., and Brake Parts, Inc.,

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------x

| | | |
|---|---|---|
| **In Re** | : | Chapter 11 |
| | : | |
| **DELPHI CORPORATION,** et al., | : | Case No. 05-44481 (RDD) |
| | : | |
| Debtors. | : | Hon. Robert D. Drain |
| | : | |

-------------------------------------------------------------x

| | | |
|---|---|---|
| DELPHI CORPORATION, et al., | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| Against | : | |
| | : | |
| AFFINIA GROUP HOLDINGS, INC., | : | Adv. Pro. No. 07-02198 (RDD) |
| AFFINIA, AFFINIA CANADA CORP., | : | |
| AFFINIA GROUP, AFFINIA CANADA, | : | |
| BRAKE PARTS, INC., ITAPSA S.A. DE C.V. | : | |
| AND WIX FILTRATION | : | |
| PRODUCTS EUROPE | : | |
| | : | |
| Defendants. | : | |

-------------------------------------------------------------x

**MEMORANDUM OF LAW IN SUPPORT OF MOTION OF AFFINIA GROUP
HOLDINGS, INC., AFFINIA CANADA CORP., AND BRAKE PARTS, INC. TO: (A)
VACATE CERTAIN PRIOR ORDERS OF THE COURT; (B) DISMISS THE
COMPLAINT WITH PREJUDICE; OR (C) IN THE ALTERNATIVE, TO DISMISS
THE CLAIMS AGAINST CERTAIN DEFENDANTS NAMED IN THE COMPLAINT
<u>AND TO REQUIRE PLAINTIFFS TO FILE A MORE DEFINITE STATEMENT</u>**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................................1

STATEMENT OF FACTS .......................................................................................3

    A.    Debtors Never Gave Affinia Notice of the Preservation of Estate Claims Procedures Motion or Any of the Extension Motions ............................................... 3

        1.    Debtors' Preservation of Estate Claims Procedures Motion............................ 3

        2.    Debtors Commence An Adversary Proceeding Against Affinia ..................... 5

        3.    The First Amended Joint Plan of Reorganization ............................................ 5

        4.    Debtors' Second Extension of Avoidance Action Service Deadline Motion... 5

        5.    Debtors' Third Extension of Avoidance Action Service Deadline Motion...... 6

        6.    Debtors' Fourth Extension of Avoidance Action Service Deadline Motion .... 8

    B.    Affinia Suffers Great Prejudice During the Time it has No Notice.......................... 8

    C.    Delphi Finally Serves the Complaint 4 ½ Years Later ............................................ 9

ARGUMENT .......................................................................................................10

I.    THE PROCEDURES ORDER AND EXTENSION ORDERS SHOULD BE VACATED AS TO AFFINIA AS VOID BECAUSE THEY WERE ENTERED WITHOUT AFFINIA HAVING NOTICE AND AN OPPORTUNITY TO RESPOND IN VIOLATION OF AFFINIA'S FUNDAMENTAL DUE PROCESS RIGHTS. .......................................................................................................10

    A.    Standard For Vacating Interlocutory Orders .......................................... 10

    B.    Enforcing the Procedure Order and Extension Orders Would Violate Due Process Because Affinia Was Not Given Notice ..................................... 12

II.    THE COMPLAINT SHOULD BE DISMISSED BECAUSE IT IS BARRED BY THE TWO YEAR STATUTE OF LIMITATIONS FOR AVOIDANCE ACTIONS. ..................................................................................................15

III.    FOREIGN CLAIMS AND CLAIMS UNDER $250,000 SHOULD BE DISMISSED AS ABANDONED. ....................................................................18

IV.    THE COMPLAINT IS BARRED BY JUDICIAL ESTOPPEL......................................21

V.    THE COMPLAINT IS BARRED BY RES JUDICATA. ................................................23

VI.    THE COMPLAINT IS BARRED BY LACHES.............................................................25

VII.  THE PROCEDURES ORDER AND EXTENSION ORDERS SHOULD BE VACATED FOR ADDITIONAL REASONS....................................................................26

    A.  The Procedures Order and Extension Orders Should Be Vacated Because There Was No Cause To Extend The Time For Service .......................................... 26

        1.  "Good Cause" Did Not Exist .......................................................... 26

        2.  The Facts Did Not Warrant A Discretionary Extension .................................. 28

    B.  The Extension Orders Should Be Vacated Because The Complaints Were Improperly Sealed.................................................................................... 30

VIII.  THE COMPLAINT FAILS TO PLEAD FACTS SUFFICIENT TO STATE A CLAIM FOR RELIEF AND SHOULD BE DISMISSED. ...............................................32

IX.  IN THE ALTERNATIVE, DEBTORS SHOULD BE REQUIRED TO FILE A MORE DEFINITE STATEMENT ....................................................................35

X.  THE COMPLAINT SHOULD BE DISMISSED AS TO ENTITIES WHICH DO NOT EXIST ...........................................................................................36

XI.  DEFENDANTS INCORPORATE ALL APPLICABLE ARGUMENTS RAISED BY OTHER DEFENDANTS IN THEIR DISMISSAL MOTIONS. ...............................36

CONCLUSION...........................................................................................................36

# TABLE OF AUTHORITIES

CASES

*Angell v. Haven (In re Careamerica)*,
409 B.R. 346 (Bankr. E.D.N.C. 2009) .............................................................. 33-35

*Ashcroft v. Iqbal*,
129 S.Ct. 1937 (2009) ....................................................................................2, 33, 35

*Bank of Cape Verde v. Bronson*,
167 F.R.D. 370 (S.D.N.Y. 1996) ...............................................................................27

*Bd. of Regents v. Tomanio*,
446 U.S. 478 (1980)...................................................................................................28

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)........................................................................................... 32-35

*Browning v. Levy*,
283 F.3d 761 (6th Cir. 2002) ............................................................................ 24-25

*Burks v. Griffith*,
100 F.R.D. 491 (N.D.N.Y. 1984) ..............................................................................17

*City of New York v. New York, N.H. & H. R.R. Co.*,
344 U.S. 293 (1953)........................................................................................... 13-15

*Diversified Hospitality Group, Inc. v. Carson Pirie Scott & Co.*,
No 90 CIV 2957 (WK), 1991 WL 35953 (S.D.N.Y. Mar. 8, 1991) .......................17

*Eastern Refractories Co. v. Forty Eight Insulations, Inc.*,
187 F.R.D. 503 (S.D.N.Y. 1999) ........................................................................26, 29

*Fustok v. Conticommodity Services, Inc.*,
122 F.R.D. 151 (S.D.N.Y. 1988) ..............................................................................12

*Galerie Des Monnaies of Geneva, Ltd. v. Deutsche Bank, A.G., New York Branch (In re Galerie Des Monnaies of Geneva, Ltd)*,
55 B.R. 253 (Bankr. S.D.N.Y. 1986) ........................................................................22

*In re Adelphia Comms. Corp.*,
333 B.R. 649 (S.D.N.Y. 2005)...................................................................................10

*In re Bethlehem Steel Corp.*,
203 B.R. 554 (D. Del. 1996)......................................................................................11

*In re Cornwall*,
    9 Blatchf. 114, 6 F. Cas. 586, 591 (C.C.D. Conn. Sept. Term 1871) ......................................17

*In Re Chartschlaa*,
    538 F.3d 116 (2d Cir. 2008)................................................................................................21

*In re EPIC Associates V*,
    54 B.R. 445 (Bankr. E.D. Va. 1985) .......................................................................... 31-32

*In re Food Management Group, LLC*,
    359 B.R. 543 (Bankr. S.D.N.Y. 2007)................................................................................30

*In re Fugazy Express, Inc.*,
    982 F.2d 769 (2d Cir. 1992)................................................................................................10

*In re Gitto Global Corp.*,
    No. 05-10334, 2005 WL 1027348 (D. Mass. May 2, 2005)................................................31

*In Re Grossinger's Associates*,
    184 B.R. 429 (Bankr. S.D.N.Y. 1995)................................................................................21

*In re Gucci*,
    197 Fed. Appx. 58 (2d Cir. 2006)......................................................................................25

*In re Hooker Invs., Inc.*,
    937 F.2d 833 (2d Cir. 1991)................................................................................................10

*In re I. Appel Corp.*,
    300 B.R. 564 (Bankr. S.D.N.Y. 2003)..........................................................................23, 25

*In re Johns-Manville Corp.*,
    824 F.2d 176 (2d Cir. 1987)................................................................................................10

*In re Johns-Manville Corp.*,
    __ F.3d __, 2010 WL 1007832 (2d Cir. 2010) ...........................................................11, 13

*In re Krueger*,
    88 B.R. 238 (BAP 9th Cir. 1988) ( ....................................................................................14

*In re Orion Pictures Corp.*,
    21 F.3d 24 (2d Cir. 1994)....................................................................................................32

*In re Perrotta*,
    406 B.R. 1 (Bankr. D.N.H. 2009) ......................................................................................18

*In re Premier Operations*,
    290 B.R. 33 (S.D.N.Y. 2003)..............................................................................................10

*In re Reliant Energy Channel View, L.P.*,
397 B.R. 697 (D. Del. 2008) .............................................................10

*In re Service Merchandise, et al.*,
Case No. 399-02649 (Bankr. M.D. Tenn. Feb. 27, 2001) .......................32

*In re Sherman-Noyes & Prairie Apartments Real Estate*,
59 B.R. 905, 909 (Bankr. N.D. Ill. 1986) .............................................31

*In re Venture Mortgage Fund, L.P.*,
245 B.R. 460 (Bankr. S.D.N.Y. 2000), *aff'd*, 282 F.3d 185 (2d Cir. 2002) .................... 21-22

*Int'l Asset Recovery Corp. v. Thomsom McKinnon Sec. Inc.*,
335 B.R. 520, 525 (S.D.N.Y. 2005) ....................................................24

*Lachance v. Erickson*,
522 U.S. 262 (1998) ..........................................................................12

*Martin v. Wilks*,
490 U.S. 755 (1989) ..........................................................................15

*McCrae v. KLLM Inc.*,
89 Fed. Appx. 361 (3d Cir. 2004) ......................................................29

*McKibben v. Credit Lyonnais*,
1999 WL 604883 (S.D.N.Y. Aug. 10, 1999) ........................................29

*Mennonite Bd. of Missions v. Adams*,
462 U.S. 791 (1983) ..........................................................................15

*Mullane v. Central Hanover Bank & Trust Co.*,
339 U.S. 306 (1950) ..........................................................................13

*New Hampshire v. Maine*,
532 U.S. 742 (2001) ...................................................................... 21-22

*Order of R. Telegraphers v. Railway Express Agency, Inc.*,
321 U.S. 342 (1944) .................................................................. 18, 28-29

*Prisco v. A & D Carting Corp.*,
168 F.3d 593 (2d Cir. 1999) ..............................................................11

*Rapf v. Suffolk Cty*,
755 F.2d 282 (2d Cir. 1985) ..............................................................25

*Richards v. Jefferson County, Richards v. Jefferson County*,
517 U.S. 793 (1996) ..........................................................................15

v

*Rosenshein v. Kleban*,
  918 F. Supp. 98 (S.D.N.Y. 1996) ...................................................22

*Spinale v. United States*,
  2005 WL 659150 (S.D.N.Y. Mar. 16, 2005) ................................26

*Textile Banking Co. v. Rentschler*,
  657 F.2d 844, 850 (7th Cir. 1981) ..............................................12

*United States v. Castro*,
  243 B.R. 380 (D. Ariz. 1999)................................................12, 14

*United States v. Kubrick*,
  444 U.S. 111 (1979)................................................................18, 28

*United States v. Uccio*,
  940 F.2d 753 (2d Cir. 1991)........................................................11

*United Student Aid Funds, Inc. v. Espinosa*,
  __ S.Ct. __, 2010 WL 1027825 (2010)........................................15

## STATUTES

11 U.S.C. §107.............................................................................2, 30

11 U.S.C. § 107(a) ...........................................................................30

11 U.S.C. §502(d) ............................................................................20

11 U.S.C §546(a) ........................................................................*Passim*

11 U.S.C. §547...................................................................3, 32, 34

28 U.S.C §158(d) .............................................................................10

28 U.S.C. § 2075 .............................................................................18

## OTHER AUTHORITIES

Fed. R. Bankr. P. 7004.....................................................................26

Fed. R. Bankr. P. 7012(b) ..................................................................2

Fed. R. Bankr. P. 9024.................................................................2, 11

Fed. R. Civ. P. 4(m) ...................................................................*Passim*

Fed. R. Civ. P. 8..............................................................................36

Fed. R. Civ. P. 12(b) .................................................................................................36

Fed. R. Civ. P. 12(b)(6).........................................................................................2, 32

Fed. R. Civ. P. 12(e) ..................................................................................................35

Fed. R. Civ. P. 60(b) .........................................................................................2, 11, 12

Norton Bankruptcy Law and Practice §109:16 (3d. ed. 2009) ...................................24

Wright & Miller, *Federal Practice & Procedure*, § 1137 (3d ed. 2002) ......................17

Defendants Affinia Group Holdings, Inc., Affinia Canada Corp., and Brake Parts, Inc., (each a "**Defendant**," collectively, "**Affinia**"), by their undersigned counsel, respectfully state:

## PRELIMINARY STATEMENT

In September 2007, Delphi Corporation opened a file which allegedly contained a sealed complaint against Affinia. The sealed Complaint sought to avoid and recover over $17 million in alleged preferential transfers purportedly made in mid-2005. Delphi Corporation provided ***no notice*** to Affinia that it had filed the Complaint or that it had done so only after seeking leave to initiate the matter secretly, under seal. On March 19, 2010, ***4 ½ years*** after the alleged preferential transfers were purportedly made, the Reorganized Debtors, as successor to Delphi Corporation, *et al*. (collectively, "**Delphi**"), finally served Affinia with the secret, sealed Complaint.

During this lengthy time period, while Delphi intentionally hid its avoidance actions from Affinia (and other defendants), Affinia closed virtually every facility that conducted business with Delphi. Because Affinia received no notice regarding the Complaint or Delphi's clandestine efforts to keep its avoidance actions hidden from public view, Affinia took no special steps to preserve its records with respect to Delphi, to hold exit interviews with employees who were knowledgeable about the Delphi relationship or to make arrangements to keep in touch with former employees in case Affinia would need them to provide information or serve as witnesses.

Despite this clear prejudice, Delphi contends that it may, nonetheless, proceed against Affinia -- 2 ½ years after the statute of limitations has expired and 4 ½ years after the alleged preference payments were made -- because it obtained, ***again without any notice to Affinia***, four extensions to serve its secretly-filed sealed Complaint ("**Extension Orders**").

Delphi is mistaken. The Extension Orders were obtained by Delphi without regard to the most fundamental notions of procedural due process – the right of notice and an opportunity to be heard. Because the Supreme Court and the Second Circuit have both held that orders issued in violation of due process are void (*i.e.*, a legal nullity), the Extension Orders must be vacated with respect to Affinia.

The vacation of the Extension Orders is also mandated by the fact that, if Delphi's improper actions are allowed to stand, Delphi will have orchestrated a process that will, for all practical purposes, eviscerate the purpose and intent of the two-year statute of limitations imposed by 11 U.S.C §546(a), effectively extending the Congressionally-mandated statute of limitations by over two years (and over three years with respect to foreign defendants).

Accordingly, Affinia seeks an order from the Court:

- Vacating the interlocutory Extension Orders pursuant to the Court's discretionary authority because: (a) Delphi's intentional failure to provide Affinia with notice of the motions seeking entry of the Extension Orders violates due process and renders the Extension Orders void and unenforceable against Affinia; (b) cause did not exist to extend the time for service of the Complaint; and/or (c) the Complaint was improperly filed under seal pursuant to 11 U.S.C. §107;[1]

- Dismissing with prejudice the Complaint against Affinia, pursuant to Fed. R. Civ. P. 12(b)(6), made applicable by Fed. R. Bankr. P. 7012(b), on the ground that it: (a) is barred by the 2-year statute of limitations; and/or (b) does not comply with the pleading requirements of *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009);

- Dismissing defendants Affinia, Affinia Group and Affinia Canada because they are not persons or corporations, do not exist and, therefore, cannot be sued;

- In the alternative, dismissing the Complaint with prejudice on the grounds that it is barred by laches, judicial estoppel or res judicata;

- In the alternative, dismissing with prejudice the claims against those of the Defendants which received less than $250,000 in aggregate transfers and the foreign Defendants with prejudice because Debtors abandoned avoidance actions

---

[1] To the extent the Court deems the Extension Orders to be "final" orders – which they are not – the orders should be vacated for the same reasons, pursuant to Fed. R. Civ. P. 60(b)(4), (5), (6) made applicable by Fed. R. Bankr. P. 9024.

against parties receiving less than $250,000 in aggregate transfers and actions arising from "payments to foreign suppliers;" and

- In the alternative, as to any Defendants which are not dismissed, the Court should order Delphi to file a more definite statement with respect to its Complaint.

## STATEMENT OF FACTS

On October 8 and October 14, 2005, Delphi Corporation and certain of its subsidiaries and affiliates (collectively the "**Debtors**" or "**Delphi**") each filed voluntary petitions for relief under Title 11 of Chapter 11 of the United States Code (the "**Bankruptcy Code**"). Under 11 U.S.C. §546(a), the 2-year statute of limitations for the Debtors to bring avoidance actions expired in October, 2007.

### A.    Debtors Never Gave Affinia Notice of the Preservation of Estate Claims Procedures Motion or Any of the Extension Motions

#### 1.    Debtors' Preservation of Estate Claims Procedures Motion

On August 6, 2007, shortly before the 2-year limitations period was set to expire, the Debtors sought entry of an order seeking, among other things, the establishment of procedures for certain adversary proceedings, including those commenced under 11 U.S.C. §547. As pertinent here, these procedures sought to include: (a) leave for the Debtors to file avoidance actions under seal; (b) an extension of time beyond the 120-day period provided for in Fed. R. Civ. P. 4(m) to serve summonses and complaints; and (c) a stay of adversary proceedings until service of process was effected. (Preservation of Estate Claims Procedure Motion, D.I. 8905, ¶¶ 33-38) ("**First Extension Motion**").

Debtors gave Affinia **no notice** of the First Extension Motion. (Affidavit of Service, D.I. 9039; Declaration of Patrick Manning dated March 29, 2010, ¶ 4, attached to the Motion as Exhibit A (hereafter the "**First Manning Dec**.)).[2]

The Debtors justified their need for relief by asserting that most of the adversary proceedings would be resolved by its reorganization plan (100 cent plan) and never pursued. (First Extension Motion ¶¶ 33-34). Indeed, because the Debtors asserted that the claims likely would be resolved by the 100 cent plan, the Debtors argued that the proposed procedures would not "prejudic[e] the rights of any defendants." Quite to the contrary, the Debtors asserted that the procedures would actually ***benefit the defendants*** by, among other things, allowing them to "avoid having to . . . retain counsel." (*Id.*) The Debtors apparently felt that failing to provide the defendants with notice and an opportunity to be heard (and object) was a good thing, contending that the proposed procedures would "avoid unnecessarily alarming" the defendants. (*Id.* ¶ 37). Of course, failing to furnish notice to the defendants (and sealing the avoidance complaints) provided the Debtors with a obvious tactical advantage in its negotiations with its suppliers. (*Id.* ¶¶ 33-34, 37).

The First Extension Motion also sought authority to abandon certain causes of action, including avoidance actions for transfers to a party of less than $250,000 in the aggregate and those on account of "payments to foreign suppliers." (*Id.* ¶¶ 25, 26). The abandonment of these avoidance actions is discussed in detail on pages 18 to 21 below.

On August 16, 2007, the Court entered an order providing, among other things, the requested abandonment, an extension of time to March 31, 2008 to serve the adversary

---

[2] Debtors did not include Affinia on the list of creditors which were given notice on the First Extension Motion. D.I. 9039.

complaints, as well as permission to file the complaints under seal. (D.I. 9105) (referred to as the "**Procedures Order**").

### 2. Debtors Commence An Adversary Proceeding Against Affinia

On September 27, 2007, Delphi opened a file for an adversary proceeding against Affinia, seeking to recover over $17 million in alleged preferential transfers. The Defendants are unable to verify that the sealed Complaint was actually filed before the statute of limitations ran no later than October 13, 2007.

### 3. The First Amended Joint Plan of Reorganization

On or about December 10, 2007, the Debtors filed their First Amended Joint Plan of Reorganization, Docket No. 11386 (the "**Confirmed Plan**"), which was confirmed by order of the Court dated January 25, 2008. (D.I. 12359) (the "**Confirmation Order**"). The Confirmed Plan provided for the payment in full of unsecured creditors of the Debtors. Exhibit 7.24 to the Confirmed Plan, which set forth the actions the Debtors sought to retain under the plan, notably did not contain any reference to Affinia or the Complaint.[3]

### 4. Debtors' Second Extension of Avoidance Action Service Deadline Motion

On February 8, 2008, the Debtors filed a motion seeking a second extension – until May 31, 2008 – to serve its sealed complaints. (Extension of Avoidance Action Service Deadline Motion, D.I. 12922, ¶ 18) ("**Second Extension Motion**"). The asserted purpose for this extension was to "enable the Debtors to fulfill their fiduciary responsibility to preserve valuable estate assets in a manner that would not unnecessarily disrupt the emergence process or the

---

[3] Section 14.3 of the Confirmed Plan and Modified Plan (defined below) provide that the Debtors "may alter, amend, or modify any Exhibits to this Plan under Section 1127(a) of the Bankruptcy Code **at any time prior to the Confirmation Date**." (Emphasis added). The Confirmation Date was January 25, 2008. Thus, after January 25, 2008, the Debtors did not have the right under the Modified Plan to amend or add to Exhibit 7.24 (renumbered as Exhibit 7.19 in the Modified Plan).

Debtors' current business relationships with potential defendants that are necessary to the Debtors' ongoing operations," as well as to reduce the "administrative and economic burdens" of the adversary proceedings to the Debtors, the Court, and the defendants." (*Id*. ¶ 21).

The Second Extension Motion reaffirmed that the Debtors would "not retain any causes of action asserted in the [adversary proceedings] except those specifically listed in Exhibit 7.24 of the Plan." (*Id*. ¶ 17). In fact, the Debtors stated that of the 742 adversary proceedings commenced under seal, only the claims related to Laneko Engineering Co., Wachovia Bank, National Association, Laneko Engineering Co, Inc., and their affiliates and subsidiaries (the "**Laneko Defendants**"), were subject to the Procedures Order. (*Id*. ¶ 17 n.4). This fact was confirmed by the Court during an exchange with counsel for the Debtors during oral argument -- the Court recognized that: "[t]he plan [only] reserve[d] or retain[ed] the ability to pursue a very small number of avoidance actions." (March 19, 2008 Tr. p. 22, attached to the Motion as Exhibit B).

Again, the Debtors gave *no notice* of the Second Extension Motion to Affinia. (Affidavit of Service, D.I. 12970; First Manning Dec., ¶ 4). The Court granted the second extension on March 28, 2008. (D.I. 13277, ¶ 2) (the "**Second Extension Order**").

### 5. Debtors' Third Extension of Avoidance Action Service Deadline Motion

Days later, on April 4, 2008, the Debtors announced that the plan investors had refused to fund their investments under the Confirmed Plan so that the necessary exit financing for the plan would not close.

Only days later (on April 10, 2008 – a mere 13 days after the Second Extension Order), the Debtors rushed to the Court and filed yet another motion seeking to extend the service deadline, this time until 30 days after the substantial consummation of the Debtors' plan.

(Postconfirmation Extension of Avoidance Action Service Deadline Motion, D.I. 13361, ¶ 19) (the "**Third Extension Motion**").  Based on the April 4 announcement, this had the practical effect of extending the limitations period indefinitely, a fact that could not have been lost upon the Debtors when they rushed to the Court with their latest request.

Despite the lack of funding, the Debtors, once again, offered the same justification for their third request – to avoid "unnecessarily disrupt[ing] the emergence process or the Debtors' current business relationships with potential defendants that are necessary to the Debtors' ongoing operations."  (*Id.* ¶ 22).  The Debtors also asserted that they and the defendants should not be required to spend resources on the adversary proceedings when "most of the Adversary Proceedings will not be prosecuted if the Plan were to become effective and likely not be prosecuted under any modified plan."  (*Id.*)

Again, the Debtors gave Affinia ***no notice*** of the Third Extension Motion.  (Aff. of Service, D.I. 13415; First Manning Dec. ¶ 4).  Moreover, like the Second Extension Motion, the Third Extension Motion provided that only the claims related to Laneko Defendants were subject to the Procedures Order.  (*Id.* ¶ 18 n.4). And, unlike Affinia, the Laneko Defendants were actually provided with notice of the motion.  (*Id.*; Aff. of Service, D.I. 13415).  Indeed, during oral argument, counsel for the Debtors specifically represented and admitted that the

> reasons we gave specific notice to Lenico (sic) and Wachovia was because those were the only two parties that had been identified under Exhibit 7.24 of the plan as having the avoidance actions preserved under the plan and, therefore, we gave particularized notice to them of the relief sought by the debtors.

(April 30, 2008 Tr. pp. 11-12, attached to the Motion as Exhibit C).

The Court granted the requested third extension on April 30, 2008.  (D.I. 13484, ¶ 2) (the "**Third Extension Order**").

6. **Debtors' Fourth Extension of Avoidance
Action Service Deadline Motion**

On October, 2, 2009 – four years after the bankruptcy petition was filed, two years after

expiration of the statute of limitations and over a year after entry of the Third Extension Order –

the Debtors filed yet another motion to extend the deadline for service of process, this time until

180-days after substantial consummation of the plan. (Supplemental Postconfirmation Extension

of Avoidance Action Service Deadline Motion, D.I. 18952, ¶ 16) ("**Fourth Extension Motion**")

(and, together with the First, Second and Third Extension Motions, the "**Extension Motions**").

The effective date of the plan occurred on October 6, 2009.  (D.I. 18958, ¶ 2).

Again, the Debtors gave *no notice* of the Fourth Extension Motion to Affinia. (Affidavit

of Service D.I. 18967; First Manning Dec. ¶ 4).

The Court granted the fourth extension on October 22, 2009.  (the "**Fourth Extension

Order**," D.I. 18999, ¶ 2) (and, together with the Procedures Order and the Second and Third

Extension Orders, the "**Extension Orders**").  Importantly, during the October 22, 2009 hearing

on the Debtors' motion, the Court explicitly stated that the extension was without prejudice to

the rights of the defendants in the avoidance actions to argue defenses other than statute of

limitations.  (10/22/09 Transcript p. 6, attached to the Motion as Exhibit D).

B. **Affinia Suffers Great Prejudice During the Time it has No Notice**

During the time Delphi intentionally concealed the avoidance actions, Affinia was in the

process of closing virtually every facility that had conducted business with Delphi.  Because

Affinia received no notice regarding the Complaint, Affinia took no special steps to organize and

preserve its records with respect to Delphi, to hold exit interviews with employees who were

knowledgeable about the Delphi business relationship or to make arrangements to keep in touch

with those employees in case Affinia would need them to provide litigation information or serve

as witnesses. (First Manning Dec., ¶¶ 5-8). As a result, Affinia has suffered great prejudice, and will be harmed in its ability to defend this action because it did not know between 2007 and 2010 that this action had been filed.

### C. Delphi Finally Serves the Complaint 4 ½ Years Later

After having provided no notice to Affinia that a sealed complaint had been filed against them (or notice of any of the Extension Motions or Orders), Delphi finally served Affinia with the Complaint in March 2010[4] – 2 ½ years after expiration of the statute of limitations and *4 ½ years after the alleged preferential transfers were made*.

Despite this delay, the Complaint is bare-bones, providing no information other than the alleged "transfer date," "transfer amount" and "transfer type" for the numerous transfers that Delphi seeks to avoid. (*Id.*) For example, the Complaint does not identify which of the numerous Debtors actually owed the money allegedly transferred, or to which Affinia entity the money was allegedly owed. The Complaint also does not identify which Debtor actually made the alleged payments (or out of which Debtor's bank account), or to which Affinia entity the payment was allegedly made. In fact, the Complaint even fails to set forth the identity of the actual plaintiffs making the avoidance claims (*i.e.*, which Delphi entities are suing); instead, the Complaint only states that it is brought on behalf of "Delphi Corporation ('Delphi') and other [unnamed] above-captioned debtors and debtors in possession." (*Id.*)

---

[4] While the moving parties here (Affinia Group Holdings, Inc., Affinia Canada Corp and Brake Parts, Inc.) have been served, the remaining Defendants (Itapsa S.A. De C.V. and Wix Filtration Products Europe) have not been served yet. "Affinia," "Affinia Group" and "Affinia Canada" do not exist. See Declaration of Patrick Manning dated April 16, 2010 ("**Second Manning Dec**."), attached to the Motion as Exhibit E.

**ARGUMENT**

**I.**     **THE PROCEDURES ORDER AND EXTENSION ORDERS SHOULD BE VACATED AS TO AFFINIA AS VOID BECAUSE THEY WERE ENTERED WITHOUT AFFINIA HAVING NOTICE AND AN OPPORTUNITY TO RESPOND IN VIOLATION OF AFFINIA'S FUNDAMENTAL DUE PROCESS RIGHTS.**

        **A.**     **Standard For Vacating Interlocutory Orders**

The Procedures Order and the four Extension Orders are "interlocutory," rather than "final" orders. In order for a bankruptcy court order to be "final" within the meaning of 28 U.S.C §158(d), the order "must completely resolve all of the issues pertaining to a discrete claim, including issues as to the proper relief." *In re Fugazy Express, Inc.*, 982 F.2d 769, 776 (2d Cir. 1992). This means that "'all the issues' . . . that are outstanding between particular parties, that the bankruptcy court has under consideration or will be expected to rule upon, and that potentially may become the basis for appeal" must be completely resolved by the Bankruptcy Court's order. *In re Premier Operations*, 290 B.R. 33, 42 (S.D.N.Y. 2003) (citations omitted). Because the Procedures Order and Extension Orders did not resolve all of the disputed issues – such as, Affinia's liability and the amount of damages, if any, to be awarded – the orders are not final. Indeed, courts generally deem procedural orders interlocutory because such orders do not finally resolve the substantive issues between the parties. *In re Hooker Invs., Inc.*, 937 F.2d 833, 836-37 (2d Cir. 1991) (bar date order not a final order); *In re Johns-Manville Corp.*, 824 F.2d 176, 180 (2d Cir. 1987) (order denying shareholder requests for official committee status not a final order); *In re Reliant Energy Channel View, L.P.*, 397 B.R. 697, 699-700 (D. Del. 2008) (bidding procedures order not final because it did not conclusively resolve all issues between the parties); *In re Adelphia Comms. Corp.*, 333 B.R. 649, 654-60 (S.D.N.Y. 2005) (order addressing proposed set of procedures to resolve inter-debtor issues not final because the order "direct[ed]

10

the parties to engage in or participate in further proceedings and [did] not resolve any substantive issue"); *In re Bethlehem Steel Corp.*, 203 B.R. 554, 557 (D. Del. 1996) (order establishing procedures regarding reclamation claims not a final order because it did not resolve the validity, priority or value of the claims).

This Court is free to reconsider or modify its interlocutory orders at its discretion. *United States v. Uccio*, 940 F.2d 753, 757-58 (2d Cir. 1991). Moreover, while the law of the case doctrine does "inform[] the court's discretion," the law of the case doctrine does not limit a court's power and is not an inviolate rule. *Id.* at 758. The Second Circuit explained:

> the decision whether or not to apply law-of-the-case is, in turn, informed principally by the concern that disregard of an earlier ruling not be allowed to prejudice the party seeking the benefit of the doctrine. In this context "prejudice" does not mean harm resulting from the failure to adhere to the prior decision; "rather, it refers to a lack of sufficiency of notice" or a lack of sufficient "opportunity to prepare armed with the knowledge that [the prior ruling is not deemed controlling]."

*Id.* at 758 (internal citations omitted); *see also Prisco v. A & D Carting Corp.*, 168 F.3d 593, 607 (2d Cir. 1999). Delphi has unquestionably been provided ample notice and an opportunity to persuade this Court that the Court should not alter it prior Orders.

The Second Circuit has also made it clear that where, as here, a litigant was not given notice and an opportunity to be heard (and, therefore, "battle" for the court's prior decision), the law of the case doctrine does not foreclose, in any manner, the party's due process argument. *In re Johns-Manville Corp.*, __ F.3d __, 2010 WL 1007832, at *13 (2d Cir. 2010). Accordingly, this Court has unfettered discretion to vacate its Procedures and Extension Orders.

Furthermore, even if the Court were to conclude that its Extension Orders are "final," the same relief requested by Affinia would be warranted under Fed. R. Civ. P. 60(b)(4), (5) and (6). Rule 60(b)(4), made applicable by Fed. R. Bankr. P. 9024, authorizes a court to relieve a party

from a final order if the order is void. Fed. R. Civ. P. 60(6)(4). A court must grant relief under this Rule if the order "is void because entry of order violates due process rights." *Fustok v. Conticommodity Services, Inc.*, 122 F.R.D. 151, 154-55 (S.D.N.Y. 1988) (citing *Textile Banking Co. v. Rentschler*, 657 F.2d 844, 850 (7th Cir. 1981)); *see also United States v. Castro*, 243 B.R. 380 (D. Ariz. 1999) (explaining that vacation of the order is mandatory, not discretionary). Fed. R. Civ. P. 60(b)(5) and (6) also provide, in relevant part:

> On motion and just terms, the Court may relieve a party or its legal representative from a final judgment, order or proceeding for the following reasons . . . . (5) applying it [the order] prospectively is no longer equitable; or (6) any other reason that justifies relief.

## B. Enforcing the Procedure Order and Extension Orders Would Violate Due Process Because Affinia Was Not Given Notice

Affinia respectfully submits that the combination of permitting the Debtors to file the Complaint under seal – thereby concealing from Affinia that it had been sued – while repeatedly extending the Debtors' time to serve process for nearly 2 ½ years after the expiration of the statute of limitations – all without notice or an opportunity for Affinia to object – has resulted in a proceeding completely devoid of procedural due process.

The following is undisputed: (i) the Debtors failed to notify Affinia that they filed the Procedures Motion and failed to notify Affinia that they filed three Extension Motions; (ii) the Debtors failed to notify Affinia that they had filed a sealed Complaint; and (iii) as a result, Affinia had absolutely no opportunity to be heard (and to object) with respect to these motions (which ultimately resulted in a series of orders which, in part, extended the time to serve the sealed Complaint until 2 ½ years after expiration of the statute of limitations).

It has been long recognized that: "The core of due process is the right to notice and a meaningful opportunity to be heard." *Lachance v. Erickson*, 522 U.S. 262, 266 (1998). For

example, in *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313-14 (1950)

(citations omitted), the Supreme Court established what Due Process requires:

> [T]here can be no doubt that at a minimum [the Due Process Clause] require[s] that deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case. . . . An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the action and afford them an opportunity to present objections.

Indeed, the right to be heard "has little reality or worth unless one is informed that the matter is

pending and can choose for himself whether to appear or default, acquiesce or contest."

*Mullane*, 339 U.S. at 314.

Accordingly, the Supreme Court and the Second Circuit both recognize that, if a party

like Affinia is not afforded due process during the proceeding that led up to entry of an order, the

party is not bound and the order is unenforceable against that party. For example, in *City of New

York v. New York, N.H. & H. R.R. Co.*, 344 U.S. 293 (1953), the City, a creditor of the

bankruptcy debtor, did not receive notice of the claims bar date order issued by the court despite

the fact that the debtor was required to mail notice of the order to the City. The Supreme Court

held that the City, whose identity and address were known, was not bound by the claims bar date

because it was not given notice by the debtor. Similarly, in *In re Johns Manville Corp.*, __ F.3d

__, 2010 WL 1007832, at *20 (2d Cir. 2010), the Second Circuit held that because Chubb

Indemnity Insurance Company did not receive notice of the proceedings that led to approval of:

(i) the 1984 Insurance Settlement Agreement and the Manville Plan; and (ii) the 1986 Orders at

issue, it was not bound by the orders (because to bind Chubb would violate its due process

rights).

Likewise, in *United States v. Castro*, 243 B.R. 380 (D. Ariz. 1999), the government did not receive notice of a motion filed by the debtor seeking a determination of tax liability or the court's related order. Because the government received no notice, the court held the order was void as a matter of law (in violation of due process) and was vacated as to the government. *See also In re Krueger*, 88 B.R. 238 (BAP 9th Cir. 1988) (vacating order of dismissal on due process grounds, explaining that the debtor did not receive notice of the hearing; as a result, the court retroactively reinstated the automatic stay and held that a foreclosure sale was void in violation of the automatic stay).

This Court recognized this basic fact when recently addressing whether the unserved foreign defendants would need to seek relief from the uniform case management order proposed by Delphi. The Court stated:

> Well, would they even have to seek relief if they're not a party. I mean, it's odd to say that they'd be bound if they're not party to an adversary proceeding that's been . . . served yet.

(April 1, 2010 Transcript, p. 13, attached to the Motion as Exhibit F).

Moreover, Affinia's due process rights are not affected by the fact that Affinia knew of the Debtors' bankruptcy proceeding. In *City of New York*, the Supreme Court expressly declared that the Due Process Clause entitles creditors to reasonable notice from a bankruptcy court before they will be bound -- even where the creditor knew of the bankruptcy proceedings but did not monitor them. The Court stated:

> Nor can the bar order against New York be sustained because of the city's knowledge that reorganization of the railroad was taking place in the court. The argument is that such knowledge puts a duty on creditors to inquire for themselves about possible court orders limiting the time for filing claims. But even creditors who have knowledge of a reorganization have a right to assume that the statutory 'reasonable notice' will be given them before their claims are forever barred.

344 U.S. at 297. The Supreme Court has never wavered from this reasoning. *See*, *e.g.*, *Richards v. Jefferson County*, *Richards v. Jefferson County*, 517 U.S. 793, 800 n.5 (1996) (no duty to intervene in suit in which the party is a stranger); *Martin v. Wilks*, 490 U.S. 755, 763 (1989) (no duty to intervene where a party is entitled to notice and a hearing before its rights are affected); *Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 799 (1983) ("a party's ability to take steps to safeguard its interests does not relieve the State of its constitutional obligation" to serve notice).

Accordingly, the Procedures Order and the Extension Orders must be vacated. *United Student Aid Funds, Inc. v. Espinosa*, __ S.Ct. __, 2010 WL 1027825, at *6 (2010) (where notice and an opportunity to be heard are not provided, the order is a "legal nullity").

## II. THE COMPLAINT SHOULD BE DISMISSED BECAUSE IT IS BARRED BY THE TWO YEAR STATUTE OF LIMITATIONS FOR AVOIDANCE ACTIONS.

Because some or all of the Extension Orders should be vacated, Delphi's Complaint is barred by the 2-year statute of limitations. Furthermore, because Affinia had no notice of the sealed Complaint (or the Debtors' motions or the resulting orders), allowing Delphi to prosecute its claims now, 2 ½ years after the statute of limitations expired and 4 ½ years after the alleged preference payments were made, would result in unfair prejudice to Affinia and would eviscerate the purpose of the statute of limitations. Accordingly, the appropriate remedy is to bar Delphi's claim.

Section 546(a) of the Bankruptcy Code sets forth a statute of limitations for bringing avoidance claims:

> An action or proceeding under section 544, 545, 547, 548, or 553 of this title may not be commenced after the earlier of--
>
> (1) the later of--
>
> (A) 2 years after the entry of the order for relief; or
>
> (B) 1 year after the appointment or election of the first trustee under section 702, 1104, 1163, 1202, or 1302 of this title if

> such appointment or such election occurs before the expiration of the period specified in subparagraph (A); or

> (2) the time the case is closed or dismissed.

11 U.S.C. § 546(a). The statute of limitations began to run upon the Debtors' respective petition dates (October 8 and 14, 2005) and expired, at the latest, on October 13, 2007, 2 ½ years ago.

As a threshold matter, once some or all of the Extension Orders are vacated and/or modified, the service extensions contained therein will, correspondingly, be eliminated and, as a result, the claims asserted in the Complaint will have now become time-barred. While this result may appear harsh at first blush, the extinguishment of the Debtors claims has, with all due respect, been brought about by the Debtors' <u>own strategic decisions</u> – the Debtors made a decision to keep the preference actions a secret in order to negotiate the best deals it could with the defendants.

The Debtors, quite simply, took a risk. They made an election to hide the avoidance actions from the defendants in order to negotiate more favorable contract terms than they otherwise would have been able to had the defendants known about the avoidance actions. Having made this election, the Debtors clearly undertook a risk that when the defendants were finally served, the avoidance actions would be dismissed for any number of reasons, including the statute of limitations. This risk was not unknown. The Court, for example, when granting the Fourth Extension Motion, specifically reminded the Debtors that the extensions granted by the Court were without prejudice to the rights of the defendants in the avoidance actions to argue defenses other than statute of limitations. (10/22/09 Transcript p. 6, attached to the Motion as Exhibit D).

Affinia is doing precisely what the Court warned the Debtors defendants might do based on the strategic decisions made by the Debtors. In fact, courts regularly recognize that the Rule

4(m) requirement that a case be dismissed (and then refiled) must be followed even where, as here, the passage of time will result in the re-filed complaint being barred by the statute of limitations. *Burks v. Griffith*, 100 F.R.D. 491, 493 (N.D.N.Y. 1984); Wright & Miller, *Federal Practice & Procedure*, § 1137, p. 386-87 (3d ed. 2002) ("The dismissal-without-prejudice provision allows a plaintiff to refile the complaint as if it never had been filed, but it does not provide relief from <u>defenses</u> based on the passage of time, such as the statute of limitations."). This Court informed the Debtors that their actions were subject to the defendants' defenses and, accordingly, the dismissal is the result of the Debtors' own making. Allowing the Debtors to profit, to the Defendants' detriment, at both ends, is inequitable and unfair.

Additionally, even if the Court refuses to vacate some or all of the orders, Delphi's avoidance claims still must be dismissed because it would be inappropriate to permit the Debtors to bypass the statute of limitations through their efforts to delay service of the Complaint, particularly where, as here, the delay brought about by the Debtors would effectively increase the Congressionally-mandated statute of limitations by more than 2 ½ years, <u>all for the convenience of the Debtors and at the expense of the defendants</u>. A statute of limitations, such as the two-year limitations period found in Section 546(a), is a statute of repose " 'enacted upon the presumption, that one having a well-founded claim will not delay enforcing it beyond a reasonable time, if he has the power to sue.' " *In re Cornwall*, 9 Blatchf. 114, 6 F. Cas. 586, 591 (C.C.D. Conn. Sept. Term 1871). "Statutes of repose are intended to give plaintiffs notice of the time within which they may prosecute legal claims and to alert potential defendants of the time beyond which their exposure to liability ceases." *Diversified Hospitality Group, Inc. v. Carson Pirie Scott & Co.*, No 90 CIV 2957 (WK), 1991 WL 35953, at *5 (S.D.N.Y. Mar. 8, 1991).

By keeping this action a secret for well over two years *after* the statute of limitations expired, the Debtors deliberately chose a course of action that will guarantee that the evils the statute of limitations were designed to prevent will actually occur – evidence has likely been lost, memories have faded and witnesses have disappeared. *Order of R. Telegraphers v. Railway Express Agency, Inc.*, 321 U.S. 342, 348-49 (1944); *United States v. Kubrick*, 444 U.S. 111, 117 (1979) (statutes of limitation "protect defendants and the courts from having to deal with cases in which the search for truth may be seriously impaired by the loss of evidence, whether by death or disappearance of witnesses, fading memories, disappearance of documents, or otherwise"). As a result, Affinia's ability to defend itself has been substantially impaired. First Manning Dec. ¶¶ 5-8. Sealing the complaint <u>and</u> waiting 2 ½ years to serve it on Affinia is, in fact, no different than if the Debtors filed the Complaint long past the expiration of the statute of limitations. And, of course, it is black-letter law that procedural rules, such as Rule 4(m) cannot "abridge, enlarge, or modify any substantive right." 28 U.S.C. § 2075; *In re Perrotta*, 406 B.R. 1, 8 (Bankr. D.N.H. 2009) ("Therefore, to the extent that the Bankruptcy Rules and the Bankruptcy Code are inconsistent, the statute controls.").

Accordingly, Affinia submits that Delphi's claims are barred by the statute of limitations and should be dismissed.

## III.   FOREIGN CLAIMS AND CLAIMS UNDER $250,000 SHOULD BE DISMISSED AS ABANDONED.

The preference claims against Affinia Canada Corp. and Defendants receiving less than $250,000 in transfers are barred by Delphi's abandonment of such claims in August 2007.[5] In

---

[5] In the Complaint, Delphi does not specify which of the transfers it seeks to avoid went to which Defendants. Upon information, certain of the Defendants received less then $250,000 in the aggregate of transfers. The claims against any such Defendants should be dismissed as abandoned Under $250,000 Claims.

the First Extension Motion (D.I. 8905), Delphi sought authority to file certain preference complaints under seal, to extend the time to serve the complaints, and to abandon other claims.

Delphi divided the claims it was seeking authority to abandon into two categories: claims it had already exercised its discretion and decided to abandon, and claims it might decide to abandon in the future. The categories it had already decided to abandon included "any preference action against an entity if the aggregate value of transfers to or for the benefit of that entity is less than $250,000 in value" (the "**Under $250,000 Claims**"). First Extension Motion ¶ 25. Another category of preference claims Delphi had decided to abandon were claims against foreign suppliers (the "**Foreign Claims**"). Paragraph 26 of the First Extension Motion stated:

> 26. **In addition, the Debtors seek authority to abandon the following categories of potential preference actions which the Debtors, in their business judgment, have decided should not be pursued:** (i) payments to parties with a secured or priority interest in such payment, (ii) union dues, (iii) pension plan contributions, (iv) payments required under the terms of collective bargaining agreements, (v) payments to reimburse employee business expenses, (vi) ordinary course wages, salaries, and benefits to employees (vii) payments required by a garnishment to satisfy third-party judgments and obligations, (viii) contributions to charitable organizations, (ix) **payments to foreign suppliers**, (x) payments to the Debtors' shippers, (xi) payments to the Debits' insurance providers, and (xii) payments to the Debtors' utilities. (emphasis added)

In contrast, there were categories where Delphi had not yet exercised its discretion to decide to abandon claims. For example, where a preference action was under $250,000 but against an insider or member or person associated with the SEC investigation, Delphi reserved the right to decide at a later date to abandon such claims, after notice to the Statutory Committee. First Extension Motion ¶ 25. Similarly, "[w]ith respect to other categories of causes of action, the Debtors anticipate that during their review they may identify additional causes of action which, in the exercise of their reasonable business judgment, should not be pursued". *Id.* ¶ 30.

Delphi sought authority to abandon such claims in the future based on a procedure of giving notice to the Statutory Committee.

No objections were filed to the First Extension Motion. At the August 16, 2007 hearing on the Motion, the Court indicated that some changes in the proposed order should be made to avoid ambiguity in the procedure for future abandonment and to preserve Delphi's rights under 11 U.S.C. §502(d) notwithstanding the abandonment of the preference claims. *See* Transcript 8/16/07 at pages 9-11 (excerpted pages 1 through 11 of the Transcript are attached to the Motion as Exhibit G). No changes were made in the Order with respect to the categories of claims Delphi had already decided to abandon, such as the Under $250,000 Claims and the Foreign Claims.

The Procedures Order maintains the differing treatment of claims, such as the Under $250,000 Claims and the Foreign Claims, which Delphi had already decided to abandon, and the categories of claims Delphi might, in its discretion, choose to abandon in the future. The Procedures Order provides in Paragraph 5:

> The procedures set forth in the Motion to identify causes of action that should be preserved are approved. **The Debtors are authorized, without the need for any further order or any further notice under Bankruptcy Rule 6007(a), to abandon those causes of action or categories of cause of action that debtors propose in the Motion to abandon.** Subject to the procedures set forth in the Motion, the Debtors are further authorized to abandon certain causes of action not specifically identified in the Motion that they determine should not be pursued, including the categories of actions set forth in the Motion, without the need for any further order or any further notice under Bankruptcy Rule 6007(a). The Debtors may abandon additional causes of action after giving notice to the Statutory Committees. If a Statutory Committee objects within 10 days after service of the notice, the Debtors may bring the matter before this Court for a ruling on whether the proposed abandonment satisfies section 554(a) of the Bankruptcy Code. (emphasis added).

Delphi unambiguously expressed its intent to abandon the Under $250,000 Claims and Foreign Claims. Delphi filed the First Extension Motion for authority to abandon such claims,

representing that it had already exercised its business judgment and decided to abandon the Under $250,000 Claims and Foreign Claims. Delphi moved forward with the abandonment at the August 16, 2007 hearing on the motion. Delphi obtained entry of the Procedures Order authorizing the abandonment. *Cf. In Re Chartschlaa,* 538 F.3d 116, 123-124 (2d Cir. 2008) (intent to abandon ambiguous when motion was filed, but at hearing, trustee specifically requested court to take no action on the abandonment issue).

As a consequence of the abandonment, the Delphi estate was divested of any interest in or control over the Under $250,000 Claims and Foreign Claims:

> '[A]bandonment constitutes a divestiture of all interests in property that were property of the estate . . . Abandonment once accomplished is irrevocable, regardless of any subsequent discovery that the property had greater value than previously believed.' Abandonment under section 554 removes the property in question from the bankruptcy estate and causes the trustee to lose all interest, rights and control with respect to the abandoned property.

*In Re Grossinger's Associates*, 184 B.R. 429, 432 (Bankr. S.D.N.Y. 1995).

Delphi's later filing of the Complaint asserting Under $250,000 Claims and Foreign Claims did not reinstate such claims as property of the estate. The Under $250,000 Claims and Foreign Claims were irrevocably abandoned and must be dismissed.

## IV.  THE COMPLAINT IS BARRED BY JUDICIAL ESTOPPEL.

The doctrine of judicial estoppel "prevents a party from asserting a factual position in a legal proceeding that is contrary to a position previously taken by [that party] in a prior legal proceeding." *In re Venture Mortgage Fund, L.P.*, 245 B.R. 460, 471 (Bankr. S.D.N.Y. 2000), *aff'd*, 282 F.3d 185 (2d Cir. 2002). Judicial estoppel "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001). Courts have uniformly

recognized that the purpose of judicial estoppel is to "protect the integrity of the judicial process … by prohibiting parties form deliberately changing positions according to the exigencies of the moment." *Id.* at 749-750; *see also Rosenshein v. Kleban*, 918 F. Supp. 98, 104 (S.D.N.Y. 1996) ("Judicial estoppel is invoked … to prevent the party from playing fast and loose with the courts, and to protect the essential integrity of the judicial process.). "The doctrine does not depend upon prejudice to the party invoking it." *Galerie Des Monnaies of Geneva, Ltd. v. Deutsche Bank, A.G., New York Branch (In re Galerie Des Monnaies of Geneva, Ltd)*, 55 B.R. 253, 260 (Bankr. S.D.N.Y. 1986).

The *New Hampshire* court observed that "the circumstances under which judicial estoppel may appropriately be invoked are probably not reducible to any general formulation of principle." *New Hampshire*, 532 U.S. at 750 (internal citations omitted). The Second Circuit has identified two factors that must be satisfied to invoke the doctrine of judicial estoppel: (i) the party against whom estoppel is asserted took an inconsistent position in a prior proceeding, and (ii) the first tribunal adopted the inconsistent position in some manner, such as by rendering a favorable judgment. *In re Venture Mortgage Fund, L.P.*, 245 B.R. at 472.

As discussed in detail above, the Debtors repeatedly represented to the Court (both orally and in writing) that, with respect to avoidance actions that they intended to preserve and pursue, they only intended to pursue claims against the Laneko Defendants. The Debtors took this position in Exhibit 7.24 to the Confirmed Plan, confirmed this position in their Second Extension Motion and reaffirmed this position in their Third Extension Motion. The Court, in turn, accepted Debtors' position that it intended to pursue only four avoidance claims when it entered orders granting the relief sought by the Debtors in their motions.

By bringing the Complaint against Affinia (and the other avoidance defendants), Delphi now takes the exact opposite position than that: (i) advanced in the prior motions; and (ii) adopted by the Court. Affinia respectfully submits, pursuant to doctrine of judicial estoppel, that the Court should not sanction the Debtors' attempt to "play fast and loose with the court" and allow Delphi to pursue 177 avoidance claims after the Debtors previously, and consistently, stated they intended to pursue no more than four claims. Had the Court known, when ruling on the motions, that the Debtors would actually file 177 (rather than 4) avoidance actions, Affinia is confident the Court would not have permitted the Debtors to file their actions under seal and repeatedly extend the statute of limitations by over two years, all without providing any notice to Affinia (and the other defendants). Indeed, when ruling on the motions, the Court ensured that the Laneko Defendants – the 4 preserved defendants – received notice of the Debtors' motions.

Accordingly, Affinia requests that the Court exercise its discretion and apply the doctrine of judicial estoppel to prevent the Debtors from pursing their claims against Affinia, which the Debtors had repeatedly indicated they would not pursue.

## V. THE COMPLAINT IS BARRED BY RES JUDICATA.

The Debtors lack standing to pursue the avoidance actions because they did not retain those actions in the Modified Plan, other than their claims against the Lenako Defendants, and did not have the authority under the Modified Plan to amend Exhibit 7.19/7.24 to preserve causes of action not listed in Exhibit 7.19/7.24. In addition, the Debtors' claims should be barred by *res judicata* because the Debtors did not adequately describe the preserved causes of action in the Modified Plan so as to preserve the avoidance actions for the benefit of the estate.

It is black-letter law that "[t]he confirmation of a bankruptcy plan of reorganization must be accorded res judicata effect … [and] prevents the subsequent assertion of any claim not

preserved in the plan as required by § 1123(b)(3)." *In re I. Appel Corp.*, 300 B.R. 564, 568 (Bankr. S.D.N.Y. 2003). "[T]he general rule is that, absent an express plan provision to the contrary, the debtor loses the right to bring bankruptcy causes of action, such as to recover a preference or for turnover, after the confirmed plan's effective date." Hon. William L. Norton, Jr. & William L. Norton III, Norton Bankruptcy Law and Practice §109:16 (3d. ed. 2009) (citing *Int'l Asset Recovery Corp. v. Thomsom McKinnon Sec. Inc.*, 335 B.R. 520, 525 (S.D.N.Y. 2005)).

As discussed above, on December 27, 2007, the Debtors listed the causes of action they intended to preserve in Exhibit 7.19/7.24 to the Confirmed Plan. Article 7.24 of the Confirmed Plan and Article 7.19 Modified Plan (D.I. 18707) state that "Causes of Action against Persons arising under section 544, 545, 547, 548, or 553 of the Bankruptcy Code or similar state laws shall not be retained by the reorganized Debtors unless specifically listed on Exhibit 7.24 [7.19 in the Modified Plan]." Upon entry of the Confirmation Order, the Debtors lost the ability to amend Exhibit 7.19/7.24. Accordingly, the Debtors are barred by application of *res judicata* from pursuing any causes of action other than those specifically preserved in Exhibit 7.19/7.24.

Additionally, even if the Court finds that the Debtors had the right to amend Schedule 7.19/7.24, the Debtors have not adequately described the avoidance actions in order to preserve them under the Modified Plan. Exhibit 7.19/7.24 provided no information on the avoidance causes of action to be retained -- it did not disclose the identity of the defendant or, more importantly, the value of the claims. Indeed, because all of the complaints were filed under seal, neither the creditors nor the potential defendants could review the preserved causes of action to glean this information. Moreover, neither the Amended Disclosure Statement [D.I. 17071] nor the Modified Plan included any discussion of the Debtors' reversal of their position with respect to pursuing claims only against the Lenako Defendants. In short, the Debtors only provided a

blanket reservation, which is insufficient to avoid the *res judicata* effect of a confirmed plan.

*Browning v. Levy,* 283 F.3d 761, 764 (6th Cir. 2002). The Sixth Circuit explained:

> NW's blanket reservation was of little value to the bankruptcy court and the other parties to the bankruptcy proceeding because it did not enable the value of NW's claims to be taken into account in the disposition of the debtor's estate. Significantly, it neither names SSD nor states the factual basis for the reserved claims. We therefore conclude that NW's blanket reservation does not defeat the application of res judicata to its claims against SSD.

*Id.* at 775.[6]

Accordingly, the Debtors' claims against Defendant should be dismissed.

## VI.  THE COMPLAINT IS BARRED BY LACHES.

Delphi's Complaint should also be barred by laches. A defendant may prevail on a laches defense if it establishes: (1) that it lacked knowledge that the claim might be asserted against it; (2) that the plaintiff delayed asserting the claim despite an opportunity to do so; and (3) that it would be prejudiced if the claim were now allowed to go forward. *In re Gucci*, 197 Fed. Appx. 58, 60 (2d Cir. 2006); *Rapf v. Suffolk Cty*, 755 F.2d 282, 292 (2d Cir. 1985).

As was described above, Affinia had absolutely no knowledge that a claim would be asserted against it.

Second, the Debtors had numerous opportunities to assert their claim against Affinia, particularly after the Debtors knew that their creditors would no longer be paid 100 percent and that certain avoidance actions would be prosecuted (there was no justification for keeping the complaints a secret after this date). Instead, the Debtors chose to conceal the claim for 2 ½ years

---

[6] While other courts have held that a general reservation of claims is sufficient, they have done so in the context of reorganizations where the debtors have not had time to identify and evaluate potential claims. For example, in *In re I. Appel Corp,* 300 B.R. 564 (S.D.N.Y. 2003), the court found that "mandating a specific description of every claim the debtor intends to pursue could entail months or years of investigation and a corresponding delay in the confirmation of the plan of reorganization." *Id.* at 569. There was no risk of delay in Delphi's case.

after the statute of limitations expired and 4 ½ years after the purported preferential transfers were made.

Finally, as detailed above, Affinia would be severely prejudiced if the action is allowed to go forward. Virtually every Affinia facility that did business with Delphi has now closed. Records have been dealt with without efforts to organize and preserve them as to Delphi, employees have left, etc. The only party to benefit from the secrecy is Delphi, all to Affinia's detriment.

Accordingly, the Complaint should be dismissed for laches.

## VII. THE PROCEDURES ORDER AND EXTENSION ORDERS SHOULD BE VACATED FOR ADDITIONAL REASONS.

### A. The Procedures Order and Extension Orders Should Be Vacated Because There Was No Cause To Extend The Time For Service

Even in the absence of Delphi's due process violations – which alone mandate that the Extension Orders be vacated – the orders should be vacated on several additional grounds. First, cause simply did not exist for the repeated extension requests made by Delphi. Pursuant to Fed. R. Civ. P. 4(m), made applicable by Fed. R. Bankr. P. 7004, courts can only extend a plaintiff's time for service upon: (i) a showing of "good cause;" or (ii) where the court finds that a discretionary extension of service is appropriate. *Eastern Refractories Co. v. Forty Eight Insulations, Inc.*, 187 F.R.D. 503, 505-06 (S.D.N.Y. 1999). Under either test, it was Delphi's burden to establish entitlement to an extension. And, where, as here, the delay in service is substantial, this burden is a heavy one to overcome. *Spinale v. United States*, 2005 WL 659150, at *3 & *4 (S.D.N.Y. Mar. 16, 2005).

#### 1. "Good Cause" Did Not Exist

Under the first test, "good cause" exists only in "exceptional circumstances where the plaintiff's failure to serve process in a timely manner was the result of circumstances beyond its control." *Eastern Refractories*, 187 F.R.D. at 505. That is not the case here. The Debtors could have easily served the avoidance complaints at any time; instead, the Debtors made the conscious decision to seal the complaints and make no effort to serve them.

In fact, good cause cannot exist where, as here, the Debtors' failure to serve the complaints was part of an admitted strategy to obtain a tactical advantage over the defendants when renegotiating the parties' ongoing and/or future business relationships. The dynamics of the negotiations between the Debtors and various defendants would have unquestionably changed had the defendants known, when they were negotiating with the Debtors, that they were going to be sued for the return of millions of dollars.

In support of their Extension Motions, the Debtors claimed that good cause existed because: (i) future events would have likely "obviated the need to serve the [] complaint;" and (ii) it had requested the extension before the deadline expired, citing *Bank of Cape Verde v. Bronson*, 167 F.R.D. 370 (S.D.N.Y. 1996). *Bank of Cape Verde* is, however, inapplicable. In *Bank of Cape Verde*, the third-party plaintiff was pursuing good faith settlement negotiations with the plaintiff and the third-party defendants knew of the plaintiff's complaint (the plaintiff having already served all or most of the parties to the action prior to the expiration of the 120-day deadline). This is a far cry from the situation here, where Affinia was not, and could not have been in settlement negotiations with the Debtors -- because it did not know it had been sued (and, thus, could not take action to preserve evidence or protect itself). Moreover, as discussed below, the idea that future events would "obviate the need to serve the [] complaint" ended (to

the extent it ever existed in the first place) when the plan investors refused to provide funding in April 2008, before entry of the Third and Fourth Extension Orders.

## 2. The Facts Did Not Warrant A Discretionary Extension

Notwithstanding the lack of good cause, a court may still conclude that a discretionary extension is appropriate. Four factors are to be considered in this regard:

> (1) whether the applicable statute of limitations would bar the re-filed action; (2) whether the defendant had actual notice of the claims asserted in the complaint; (3) whether the defendant had attempted to conceal the defect in service; and (4) whether the defendant would be prejudiced by the granting of plaintiff's request for relief from the provision. *Eastern Refractories*, 187 F.R.D. at 506.

Here, Affinia did not have notice of the claims asserted in the complaint (factor 2) and, of course, never attempted to conceal that it had not been served (factor 3).

Moreover, there can be no doubt that Affinia has been prejudiced by the multiple extensions (factor 4). The alleged preferential payments occurred 4 ½ years ago and the statute of limitations expired 2 ½ years ago. During this time, Affinia closed virtually every facility that conducted business with Delphi and, because it had no notice (which the Debtors unquestionably withheld), Affinia took no special steps to preserve its records, to hold exit interviews with those who were knowledgeable about the Delphi business relationship or to make arrangements to keep in touch with those who could provide litigation information, necessitating obtaining pertinent documents from Delphi instead of its own records. Affinia's ability to defend itself has been substantially impaired.

Indeed, by keeping this action a secret for over two years *after* the statute of limitations expired, the Debtors intentionally choose a course of action that will, as discussed above, ensure the evils the statute of limitations were designed to prevent will actually occur. *Order of R.*

*Telegraphers*, 321 U.S. at 348-49. Simply stated, the purposes of the statute of limitations will be eviscerated if cause is found to have existed. *Bd. of Regents v. Tomanio*, 446 U.S. 478, 487 (1980); *Kubrick*, 444 U.S. at 117 (1979).

While it is clear that vacation of all or some of the Extension Orders will result in Delphi's claims being barred by the statute of limitations (factor 1), this fact, standing alone, did not warrant the granting of an extension. Courts have repeatedly recognized that "[t]he fact that plaintiff's claims may be time-barred does not require us to exercise our discretion in favor of plaintiff." *Eastern Refractories*, 187 F.R.D. at 506; *McKibben v. Credit Lyonnais*, 1999 WL 604883, at *4 (S.D.N.Y. Aug. 10, 1999) (denial of an extension "is still proper if it occurs after the expiration of the applicable statute of limitations period, and its effect is to bar the plaintiff's claims"). As the Supreme Court explained: "[E]ven if one has a just claim it is unjust not to put the adversary on notice to defend within the period of limitation and the right to be free from stale claims in time comes to prevail over the right to prosecute them." *Order of R. Telegraphers*, 321 U.S. at 349. Federal courts of appeals have, in fact, concluded that trial courts may revoke a previously granted Rule 4(m) extension if the court later determines that the extension was inappropriate (particularly where, as here, the defendant was not given notice or an opportunity to be heard in the first instance):

> [Rule 4(m)] does not address the authority of a district court that has granted [] an extension to revoke it if it subsequently determines that good cause had not been shown. We discern no reason why a district court should not be able to do so, especially were (as here) the party to be served was initially not given notice of the motions to extend or given a formal opportunity to respond to them. . . . If a district court concludes that good cause had not been shown, it is within its discretion to vacate its prior extension of time for effecting service that was based upon that erroneous foundation.

*McCrae v. KLLM Inc.*, 89 Fed. Appx. 361, 363 (3d Cir. 2004).

The statute of limitations issue Delphi now faces is entirely the result of Delphi's own making. After the plan funding fell through in early 2008, the Debtors could no longer argue that they would not have to proceed with some or all of the preference actions. Indeed, as the facts changed, the original alleged motivation for the extension, a 100 cent plan, completely fell away. By that time, the Debtors also knew (or should have known) that it had been three years since the preference payments had purportedly been made, that the statute of limitations period had expired and that Affinia was closing its facilities. The Debtors, nevertheless, made a conscious decision to seek an indefinite extension of the time to serve the complaints and to keep the complaints a secret (in order to continue to obtain a tactical advantage in their negotiations with various defendants). *See supra*. The Debtors must now live with the consequences of their actions. Simply, the Debtors' decision to conceal the avoidance actions in order to secure a better negotiating position (a decision that worked) should not have also been cause, good or otherwise, to allow the Debtors to benefit, again at the expense of the Defendants, by allowing them to avoid service of the Complaint and indefinitely extend the statute of limitations.

Accordingly, the Extension Orders should be vacated because there was no cause to extend (or continue to extend) the time for service.

**B.     The Extension Orders Should Be Vacated Because The Complaints Were Improperly Sealed**

Finally, the Extension Orders should be vacated because Delphi improperly obtained leave to file its avoidance complaints under seal.

Under 11 U.S.C. §107 (relied upon by the Debtors), papers filed in bankruptcy proceedings "are public records and open to examination by an entity at reasonable times without charge." 11 U.S.C. § 107(a). This Congressional presumption of public access "is rooted in the public's First Amendment right to know about the administration of justice." *In re Food*

*Management Group, LLC*, 359 B.R. 543, 553 (Bankr. S.D.N.Y. 2007). Indeed, "public interest in openness of court proceedings is at its zenith when issues concerning the integrity and transparency of bankruptcy court proceedings are involved." *Id.*

Because the statute reflects strong policy considerations, section 107 sets forth only two narrowly-defined exceptions -- documents can be filed under seal if they: (i) contain sensitive commercial information; or (ii) defamatory material. Section 107(b) provides: the

> bankruptcy court may – (1) protect an entity with respect to a trade secret or confidential research, development, or commercial information; or (2) protect a person with respect to scandalous or defamatory matter contained in a paper filed in a case under this title.

Motions to seal documents are "disfavored" and, as a general rule "should be entered only when actually necessary to protect a party from harm." *In re Gitto Global Corp.*, No. 05-10334, 2005 WL 1027348, at *7 (D. Mass. May 2, 2005) (citing *In re Sherman-Noyes & Prairie Apartments Real Estate*, 59 B.R. 905, 909 (Bankr. N.D. Ill. 1986)). Another court explained: "It is a highly unusual and extraordinary remedy for the Court to seal the records in any case because of the generally-recognized rule of law that the public has a right to know." *In re EPIC Associates V*, 54 B.R. 445, 448 (Bankr. E.D. Va. 1985).

Here, the Debtors claimed that they needed special protection in order to preserve both the "status quo" and their "existing business relationships" and that this amounted to "commercial information" under the statute. (First Extension Motion, ¶ 33-34). In so doing, the Debtors claimed that they had "worked to preserve and repair their business relationship with many of the potential defendants during these cases and h[ad] negotiated or regained favorable credit terms with may suppliers and [were] continuing to do so." (*Id.* ¶37).

This rationale, however, cannot possibly rise to the "exceptional circumstances" envisioned by Congress. The need to protect one's business operations and supplier relationships

exists in every corporate reorganization. This garden-variety concern is not "unusual" or "exceptional" in any sense, and to so hold would eviscerate section 107's clear protections. Indeed, because the motivation advanced by the Debtors exists in nearly every case, bankruptcy courts recognize that: "Protective orders have been denied when they were sought merely to facilitate the debtors' reorganization, or to assuage a defendant's fears that disclosure of the allegations in an adversary complaint would adversely affect its business activities." *EPIC Associates,* 54 B.R. at 449. The *EPIC Associates* court specifically stated that records cannot be sealed to "facilitate the rehabilitation of the debtors" alone. *Id.* at 448-49.[7]

Moreover, the Second Circuit has expressly defined "commercial information" to be "information which would cause an ***unfair advantage to competitors*** by providing them information as to the commercial operations of the debtor." *In re Orion Pictures Corp.*, 21 F.3d 24, 27 (2d Cir. 1994) (emphasis supplied). Nothing in the Debtors' bare-bones sealed Complaint involves information that would give an "unfair advantage to competitors" – Affinia is not and has never been a competitor of the Debtors and none of the information in the sealed-Complaint has anything to do with confidential "commercial operations of the debtor."[8]

Accordingly, the Extension Orders should also be vacated on this ground.

## VIII. THE COMPLAINT FAILS TO PLEAD FACTS SUFFICIENT TO STATE A CLAIM FOR RELIEF AND SHOULD BE DISMISSED.

---

[7] In any event, any claimed rationale for sealing the Complaint disappeared before entry of the Third and Fourth Extension Orders -- the plan had already been confirmed and the Reorganized Debtors had long ceased to have ongoing business relationships with Affinia.

[8] In support of their proposition that maintenance of ongoing business relationships was "commercial information" entitled to protection, the Debtors cited *In re Service Merchandise, et al.*, Case No. 399-02649 (Bankr. M.D. Tenn. Feb. 27, 2001). There, the court granted the debtors authority to seal certain adversary proceedings so that they could continue negotiations with the defendants, who were also the debtor's business partners. Even if the ruling were correct as a matter of law, which Affinia strongly disputes, the unpublished case is inapposite to the situation here as Affinia was not a business partner of the Debtors and actually had to close virtually every facility which had done business with Delphi.

Finally, Delphi's Complaint does not state a claim for relief under 11 U.S.C. § 547, and, therefore, must be dismissed pursuant to Rule 7012(b)(6).

In *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), the Supreme Court established the standard by which federal courts are to determine motions to dismiss. Under *Twombly*, to survive a motion to dismiss, the complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Id*. at 570. A pleading that only offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not suffice. *Id*. at 555. The Supreme Court recently elaborated on its holding in *Twombly*:

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action supported by mere conclusory statements, do not suffice. Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not "show[n]"—"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).
>
> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949, 1950 (2009) (emphasis added; internal citations to *Twombly* and corresponding quotation marks omitted).

In *Angell v. Haven (In re Careamerica)*, 409 B.R. 346 (Bankr. E.D.N.C. 2009), the bankruptcy court applied the Supreme Court's holding in *Twombly* to a preference action. The defendant filed a motion to dismiss the trustee's claims to avoid alleged preferential and fraudulent transfers. The bankruptcy court concluded that, based on the Supreme Court's holdings in *Twombly*, the trustee's complaint must plead sufficient factual allegations to establish that a preference cause of action is plausible. *Id*. at 350. The bankruptcy court then analyzed each element of the preference statute to determine if sufficient factual allegations were pleaded.

The bankruptcy court held that the trustee's complaint did not contain sufficient factual allegations to show it was plausible that a transfer of an interest of the debtor in property had occurred because the complaint failed to identify which of the debtors made the alleged transfers. *Id*. Moreover, the bankruptcy court held that the trustee's complaint did not contain sufficient factual allegations to show it was plausible that the alleged transfers were made on account of an antecedent debt. The bankruptcy court explained that "the trustee must assert the nature and amount of the antecedent debt in order to allege a plausible claim for relief." *Id*. at 351. The trustee's complaint merely recited the statutory element that the transfer was made "for, or on account of, an antecedent debt owed by the Debtors to the Defendant before the transfers were made." *Id*. The complaint lacked any facts showing the existence of an antecedent debt. The bankruptcy court explained that in order to satisfy the pleading requirements under *Twombly* "the trustee must allege facts regarding the nature and amount of the antecedent debt which, if true, would render plausible the assertion that a transfer was made for or on account of such antecedent debt." *Id*.

Like the complaint at issue in *Careamerica*, the Complaint in the instant case (attached to the Motion at Exhibit H) does not contain sufficient factual matter to state a claim for relief

under Section 547 that is plausible on its face. The Complaint contains nothing more than a formulaic recitation of the elements of a claim for relief under 11 U.S.C. § 547. The Complaint contains no factual allegations other than a list of alleged transfers contained in Exhibit 1 to the Complaint. *Id*.

First, the Debtors do not allege that they actually made the alleged transfers listed on Exhibit 1. Instead, the Debtors allege that they "made, or caused to be made," the alleged transfers. *Id*. ¶¶ 10, 12 and 13.

Second, like the complaint dismissed by the court in *Careamerica*, the Complaint here does not identify the Debtor(s) that are alleged to have made the transfers listed on Exhibit 1. Instead, the Complaint alleges that the alleged transfers were made by "Plaintiffs" which are defined to include "all of the Debtors in the above-captioned chapter 11 cases." *Id*. p.2 n.1.

Third, the Complaint does not identify the recipient of any alleged transfer. The Complaint names eight (8) different entities that allegedly received transfers but fails to identify the transfers allegedly received by each such entity. *Id*. ¶¶ 3, 10, 12 and 13. Moreover, the Complaint alleges that the transfers were made "to, or for the benefit of Defendants" leaving open the possibility that the transfers were made to some unidentified third party. *Id*. ¶ 12. Finally, like the trustee's complaint in *Careamerica*, the Complaint in the instant case does not allege any facts regarding the nature or amount of the antecedent debt.

Accordingly, the Court should dismiss the Complaint under *Iqbal* and *Twombly* .

## IX. IN THE ALTERNATIVE, DEBTORS SHOULD BE REQUIRED TO FILE A MORE DEFINITE STATEMENT

In any event, to the extent the Court concludes that the Complaint should not be dismissed under *Iqbal* and *Twombly*, Affinia respectfully requests that the Court order Delphi, pursuant to Fed. R. Civ. P. 12(e), to file a more definite statement, addressing the deficiencies

outlined above.

## X. THE COMPLAINT SHOULD BE DISMISSED AS TO ENTITIES WHICH DO NOT EXIST

Delphi has named three defendants that are not separate legal entities, "Affinia," "Affinia Group" and "Affinia Canada." *See* Second Manning Dec., Exhibit E to the Motion. Affinia, therefore, moves to have those entities struck from the Complaint and the case dismissed as against them.

## XI. DEFENDANTS INCORPORATE ALL APPLICABLE ARGUMENTS RAISED BY OTHER DEFENDANTS IN THEIR DISMISSAL MOTIONS.

Numerous other motions have been filed by the defendants in the various avoidance actions. These motions seek the dismissal of the avoidance complaints on various legal grounds. Because the facts surrounding those actions are, in many respects, similar to those found here, Affinia incorporate all applicable arguments raised by the other defendants in their dismissal motions.

## <u>CONCLUSION</u>

The concealment of the Complaint from Affinia and the delay in service for two and a half years has unduly prejudiced Affinia and violates Defendants' basic legal rights, including under the Due Process Clause. The Complaint was not served on Affinia until well after the expiration of the statute of limitations and four and a half years after the alleged preferential transfers were made and, therefore, should be dismissed to prevent Delphi from impermissibly using the procedural rules to expand the Congressionally-mandated 2-year statute of limitations. The claims are also barred by judicial estoppel, laches and res judicata. Moreover, the Debtors abandoned certain claims, including the Under $250,000 Claims and Foreign Claims. The Complaint must also be dismissed under Fed. R. Civ. P. 12(b) due to Delphi's failure to satisfy

the pleading requirements of Rule 8 (or, in the alternative, a more definite statement should be ordered). Finally, the Complaint should be dismissed because there was no cause to extend the time for service, because the Complaint was improperly served, and because the Complaint names non-existent entities as defendants.

Respectfully submitted,

HONIGMAN MILLER SCHWARTZ AND COHN LLP

Attorneys for Defendants Affinia Group Holdings, Inc.,
Affinia Canada Corp., and Brake Parts, Inc.,
By: /s/ Judy B. Calton _____
    I. W. Winsten (P30528)
    Judy B. Calton (P38733)
    Douglas Salzenstein (P59288)
    Marcia Bennett Boyce (P67584)
2290 First National Building
660 Woodward Avenue
Detroit, MI 48226-3506
Telephone: (313) 465-7344
Facsimile: (313) 465-7345
e-mail: jcalton@honigman.com

Dated: April 29, 2010

DETROIT.4136108.10

37