BUTZEL LONG, a professional corporation
Eric B. Fisher
Barry N. Seidel
Cynthia J. Haffey
Donald V. Orlandoni
380 Madison Avenue, 22nd Floor
New York, New York 10017
Telephone:  (212) 374-5359
Facsimile:  (212) 818-0494
fishere@butzel.com

*Attorneys for Plaintiffs*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DPH Holdings Corp., *et al.*,<br><br>          Reorganized Debtors. | Chapter 11<br><br>Case No. 05-44481 (RDD)<br>(Jointly Administered) |

**REORGANIZED DEBTORS' OMNIBUS RESPONSE TO MOTIONS SEEKING,
AMONG OTHER FORMS OF RELIEF, ORDERS TO VACATE CERTAIN
PROCEDURAL ORDERS PREVIOUSLY ENTERED BY THIS COURT AND TO
DISMISS THE AVOIDANCE ACTIONS AGAINST THE MOVING DEFENDANTS**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................................................. 1

STATEMENT OF FACTS ................................................................................................... 6

    A.   The Chapter 11 Filings ............................................................................. 6

    B.   Summary of the Debtors' Reorganization History and Related Transactions .......... 6

    C.   History of the Procedures to Preserve Estate Claims................................. 9

ARGUMENT ................................................................................................................ 16

I.     THIS COURT'S PRESERVATION AND EXTENSION ORDERS
      COMPLIED WITH THE APPLICABLE RULES ........................................... 16

    A.   THE COMPLAINTS WERE PROPERLY FILED UNDER SEAL ........................ 16

    B.   THE COURT PROPERLY EXTENDED THE DEADLINES FOR
        SERVING THE COMPLAINTS IN THESE ACTIONS ....................................... 21

II.    THIS COURT'S PRESERVATION ORDERS DID NOT VIOLATE
      DUE PROCESS ................................................................................. 23

    A.   THE MOVANTS HAVE NOT BEEN DEPRIVED OF A PROTECTED
        INTEREST ................................................................................ 24

    B.   ASSUMING ARGUENDO THAT THERE WAS A DEPRIVATION,
        NOTICE WAS ADEQUATE UNDER THE CIRCUMSTANCES ........................ 29

III.   PLAINTIFFS COMPLIED WITH THE STATUTE OF LIMITATIONS ....................... 31

IV.   THESE ACTIONS WERE EXPRESSLY RETAINED AND PRESERVED ................ 32

V.    CLAIMS UNDER $250,000.00 AND AGAINST FOREIGN DEFENDANTS
      WERE NOT ABANDONED ................................................................. 35

VI.   MOVANTS' JUDICIAL ESTOPPEL ARGUMENTS ARE WITHOUT MERIT .......... 37

VII.  PLAINTIFFS' CLAIMS ARE NOT BARRED BY LACHES ............................... 39

VIII. PLAINTIFFS' COMPLAINTS SHOULD NOT BE DISMISSED AS
      INADEQUATELY PLED ..................................................................... 40

IX.   THE REMAINING ARGUMENTS ASSERTED BY MOVANTS LACK MERIT ........ 42

    A.    THIS COURT HAS PERSONAL JURISDICTION OVER MOVANTS ................ 42

    B.    THE CLAIM AGAINST HP ENTERPRISE SERVICES UK LTD. SHOULD
        NOT BE DISMISSED FOR FAILURE TO SERVE ............................................... 44

    C.    THE MISSPELLING OF A PARTY'S NAME IS NOT GROUNDS TO
        DISMISS ........................................................................................................... 45

    D.    PLAINTIFFS' CLAIM AGAINST AKS RECEIVABLES, LLC, SHOULD
        NOT BE DISMISSED MERELY BECAUSE THAT DEFENDANT
        HAS DISSOLVED ............................................................................................. 46

    E.    ROTOR COATERS INTERNATIONAL'S SETOFF/RECOUPMENT
        ARGUMENT SHOULD BE DENIED ................................................................... 48

    F.    AURAMET TRADING'S 546(e) ARGUMENT SHOULD BE REJECTED ......... 49

    G.    MOVANTS' REQUEST FOR ATTORNEY'S FEES IS BASELESS ................... 50

CONCLUSION ............................................................................................................... 51

# TABLE OF AUTHORITIES

**Cases**                                                                                                       **Pages**

*Application to Enforce Admin. Subpoenas Duces Tecum of S.E.C. v. Knowles,* 87 F.3d 413,
417 (10th Cir. 1996), .......................................................................................43

*Angell v. Ber Care, Inc. (In re Caremerica Inc.),*
409 B.R. 737 (Bankr. E.D.N.C. 2009) ...............................................41

*Angell v. Haveri (In re Caremerica, Inc.),*
409 B.R. 346 (Bankr. E.D.N.C. 2009) ...............................................41

*Ashcroft v. Iqbal,*
129 S. Ct. 1937 (2009)...............................................................40, 41

*Astra USA, Inc., v. Bildman,*
2010 U.S. App LEXIS 8991 (2d Cir. April 30, 2010) ........................40

*Ayazi v. New York City Bd. of Educ.,*
315 Fed. Appx. 313 (2d Cir. 2009) ...................................................36

*Bank of Cape Verde v. Bronson,*
167 F.R.D. 370 (S.D.N.Y. 1996) .......................................................21

*Bd. of Regents of State Colleges v. Roth,*
408 U.S. 564 (1972) .........................................................................23

*Bell Atlantic Corp. v. Twombly,*
550 U.S. 544 (2007) ...................................................................40, 41

*Bolanos v. Norwegian Cruise Lines Ltd.,*
No. 01-Civ. 4182, 2002 U.S. Dist. LEXIS 12227, (S.D.N.Y. July 9, 2002) .........................39

*Boston Post Rd. Med. Imaging, P.C. v. Allstate Ins. Co.,*
221 F.R.D. 410 (S.D.N.Y. 2004) .......................................................21

*Chartschlaa v. Nationwide Mut. Ins. Co.,*
538 F.3d 116 (2nd Cir. 2008)......................................................35, 36

*City of New York v. New York, N.H. & H. R. Co.,*
344 U.S. 293 (1953) .........................................................................25

*Cohen v. TIC Financial Sys. (In re Ampace Corp.),*
279 B.R. 145, (Bankr. D. Del. 2002)............................................33, 34

*Cole v. Allen,*
   3 F.R.D. 236 (S.D.N.Y 1942) ..................................................................26

*Corporate Campaign, Inc. v. Local 7837, United Paperworkers Int'l Union,*
   265 A.D.2d 274, 697 N.Y.S.2d 37 (1st Dep't 1999)............................................43

*Costello v. United States,*
   365 U.S. 265 (1961) ..........................................................................39

*Dayton Monetary Assoc. v. Donaldson, Lufkin & Jenrette Sec. Corp.,*
   91 Civ. 2050, 1992 U.S. Dist. LEXIS 12283 (S.D.N.Y. Aug. 11, 1992), vacated in part
   on other grounds, 1993 U.S. Dist. LEXIS 14435 (S.D.N.Y. Oct. 14, 1993)........................22

*Energy Brands, Inc. v. Spiritual Brands, Inc.,*
   571 F.Supp.2d 458 (S.D.N.Y. 2008) .......................................................42, 43

*Family Golf Ctrs., Inc. v. Acushnet Co. (In re Randall's Island Family Golf Ctrs., Inc.),*
   290 B.R. 55 (Bankr. S.D.N.Y. 2003) ..........................................................45

*Fedotov v. Peter T. Roach and Associates, P.C.,*
   354 F. Supp. 2d 471 (S.D.N.Y. 2005) ........................................................36

*Friedl v. City of New York*,
   210 F.3d 79, 83 (2d Cir. 2000).................................................................50

*GC Financial Svs., Inc. v. Lee* (*In re Protected Vehicles, Inc.*),
   No. 08-00783, 2010 WL 2163283 (Bankr. D.S.C. May 28, 2010)................................43

*Galdi v. Jones,*
   141 F.2d 984 (2d Cir. 1994)...................................................................21

*Galerie Des Monnaies of Geneva, Ltd. v. Deutsche Bank*
*(In re Galerie Des Monnaies of Geneva, Ltd.),*
   55 B.R. 253 (Bankr. S.D.N.Y. 1985), aff'd, 62 B.R. 224 (S.D.N.N. 1986) .................28, 37

*Gold v. Winget (In re NM Holdings Co., LLC),*
   407 B.R. 232 (Bankr. E.D. Mich. 2009)......................................................41

*Great Pacific Money Mkts., Inc. v. (In re Krueger),*
   88 B.R. 238 (BAP 9th Cir. 1988)..............................................................25

*Hays v. Morgan Stanley DW Inc. (In re Stewart Finance Co.),*
   367 B.R. 909, 920-21 (Bankr. M.D. Ga. 2007) ...............................................49

*In re Ames Dep't Stores, Inc.,*
   No. 01-42217 (REG) (Bankr. S.D.N.Y. Feb. 3, 2004)........................................22

*In re Apex Oil Co.,*
   101 B.R. 92 (Bankr. E.D. Mo. 1989) ................................................................................18

*In re Appel Corp.,*
   300 B.R. 564 (S.D.N.Y. 2003), aff'd, 104 Fed. Appx. 199 (2d Civ. 2004).........................33

*In re Bennett Funding Group, Inc.,*
   226 B.R. 331 (Bankr. N.D.N.Y. 1998).........................................................................17, 18

*In re Blackwell,*
   263 B.R. 505 (W.D. Tex. 2000)..........................................................................................18

*In re Dana Corp.,*
   Case No. 06-10354 (BRL) (Bankr. S.D.N.Y.) (Docket No. 6671).......................................4

*In re Dura Automotive Systems, Inc.,*
   Case No. 06-11202 (KJC) (Bankr. D. Del.) (Docket No. 3317)............................................4

*In re EPIC Assocs. V,*
   54 B.R. 445 (Bankr. E.D. Va. 1985) ..................................................................................18

*In re FEMA Trailer Formaldehyde Prods. Liability Litigation,*
   MDL No. 07-1873 Section "N", 2008 U.S. Dist. LEXIS 103249,
   (E.D. La. Dec. 12, 2008)......................................................................................................25

*In re Global Crossing Ltd.,*
   295 B.R. 720 (Bankr. S.D.N.Y. 2003) ................................................................................17

*In re Hemple,*
   295 B.R. 200 (Bankr. D. Vt. 2003) .....................................................................................18

*In re I.G. Servs. Ltd.,*
   244 B.R. 377, 388 n. 14 (Bankr. W.D. Tex. 2000) (recognizing court's
   power to control dissemination of information beyond the scope of § 107),
   *rev'd on other grounds sub nom* ........................................................................................18

*In re Johns Manville Corp.,*
   600 F.3d 135 (2d Cir. 2010).................................................................................................25

*In re Neal,*
   461 F.3d 1048 (8th Cir. 2006)..............................................................................................20

*In re Orion Pictures Corp.,*
   21 F.3d 24 (2d Cir. 1994) ....................................................................................................17

*In re Robert Landau Assocs., Inc.,*
  50 B.R. 670 (Bankr. S.D.N.Y. 1985) .................................................................................18

*In re Southern Technical College, Inc.,*
  No. 92-410955, 1994 Bankr. LEXIS 1461, (Bankr. E.D. Ark. Aug. 19, 1994) ...................26

*In re Tower Automotive, Inc.,*
  Case No. 05-10578 (ALG) (Bankr. S.D.N.Y.) (Docket No. 2879) ..................................4

*In re Volpe,*
  No. 98 Civ. 8901, 1999 U.S. Dist. LEXIS 2870 (S.D.N.Y. March 15, 1999).....................50

*Itel Container Int'l Corp. v. Atlanttrafik Express Serv., Ltd.*,
  686 F. Supp. 438 (S.D.N.Y. 1988), *rev'd on other grounds*,
  982 F.2d 765 (S. D. N. Y. 1992) .......................................................................................44

*John Wiley & Sons, Inc. v. Daniel,*
  No. 06 Civ. 13373, 2007 U.S. Dist. LEXIS 33412 (S.D.N.Y. April 30, 2007)............... 39, 51

*Karlen v. N.Y. University,*
  464 F. Supp. 704 (S.D.N.Y. 1979).....................................................................................39

*Kunica v. St. Jean Financial, Inc.,*
  233 B.R. 46 (S.D.N.Y. 1999).............................................................................................35

*Kwon v. Yun,*
  606 F. Supp. 2d 344 (S.D.N.Y 2009).................................................................................47

*Ky. Dep't of Corr. v. Thompson,*
  490 U.S. 454, 460 (1989)...................................................................................................23

*Loral Fairchild Corp. v. Matsushita Elec. Indus. Co., Ltd.,*
  840 F. Supp. 211 (E.D.N.Y. 1994).....................................................................................37

*Metro Communication Corp. BVI v. Advanced Mobilecomm Technologies Inc.*,
  854 A.2d 121 (Del. Ch. 2004) ...........................................................................................47

*Mejia v. Castle Hotel, Inc.,*
  164 F.R.D. 343 (S.D.N.Y. 1996) .......................................................................................22

*Mullane v. Cent. Hanover Bank & Trust Co.,*
  339 U.S. 306, 313 (1950)..............................................................................................23, 24

*Nat'l Lawyers Guild v. Attorney General of the United States,*
  No. 77 Civ. 0999, 1980, U.S. Dist. LEXIS 13188, (S.D.N.Y. Aug. 14, 1980) ...................25

*Nixon v. Warner Commc'ns, Inc.,*
  435 U.S. 589 (1978) ................................................................................................17

*Oliveri v. Thompson,*
  803 F.2d 1265 (2d Cir. 1986).................................................................................50

*Oyama v. Sheehan (In re Sheehan),*
  253 F.3d 507 (9th Cir. 2001) ..................................................................................22

*P.A. Bergner & Co. v. Bank One (Matter of P.A. Bergner & Co.),*
  140 F.3d 1111 (7th Cir. 1998).................................................................................33

*Picard v. Cohmad Securities Corp. (In re Bernard L. Madoff Investment Securities LLC),*
  418 B.R. 75 (Bankr. S.D.N.Y. 2009) ....................................................................43

*R & J Ventures, Inc. v. Gentile (In re R & J Ventures, Inc.),*
  No. 07-61462, 2007 Bankr. LEXIS 4109 (Bankr. N.D.N.Y. Dec. 4, 2007),
  aff'd sub nom., *Nash v. Gentile*, No. 6:08-cv-006, 2008 U.S. Dist
  LEXIS 60168 (N.D.N.Y. Aug. 6, 2008) ................................................................50

*Rampersad v. Deutsche Bank Securities, Inc.,*
  No. 02-Civ-7311, 2003 U.S. Dist. LEXIS 7861 (S.D.N.Y. May 9, 2003)............21

*Randall's Island Family Golf Ctrs., Inc. v. Acushnet Co.,*
*(In re Randall's Island Family Golf Centers, Inc.),*
  290 B.R. 55 (Bankr. S.D.N.Y. 2003) ....................................................................45

*Resort Point Custom Homes, LLC v. Tait,*
  __A.2d __, 2010, No. SO8C-04-020-ESB,
  Del. Super. LEXIS 144 (Del. Super. Ct. Apr. 7, 2010) .........................................48

*Reynolds v. Wagner,*
  128 F.3d 166 (3d Cir. 1997)....................................................................................23

*Silverman v. H.I.L. Associates, Ltd. (In re Allou Distributors, Inc.),*
  387 B.R. 365 (Bankr. E.D.N.Y. 2008) ..................................................................41

*Simon v. Safelite Glass Corp.,*
  128 F.3d 68 (2d Cir. 1997) .....................................................................................37

*Slim CD, Inc. v. Heartland Payment Sys., Inc.,*
  No. 06-2256, 2007 U.S. Dist. LEXIS 62536, (D.N.J. Aug. 22, 2007)..................25

*Spano v. Boeing Company,*
  No. 3:06-cv-00743, 2008 U.S. Dist. LEXIS 54122 (S.D. Ill. July 16, 2008)........20

*State Farm Mut. Automobile Ins. Co. v. Kalika,*
    No. 04 cv 4631, 2006 U.S. Dist. LEXIS 97454 (E.D.N.Y. Mar. 16, 2006) .........................39

*Sutera v. Transp. Sec. Admin.,*
    No. 09-cv-2351, 2010 U.S. Dist. LEXIS 42759, (E.D.N.Y. Apr. 29, 2010) .........................24

*Thor Merrit Square, LLC v. Bayview Malls LLC*,
    __ A.2d __, No. 4480-VCP, 2010 Del. Ch. LEXIS 52 (Del. Ch. Mar. 5, 2010) .................48

*U.S. v. Edwards,*
    777 F.2d 644 (11th Cir. 1985).........................................................................................31

*U.S. v. Edwards*,
    777 F.2d 644, 647 (11th Cir. 1985)................................................................................31

*Young v. U.S. Dep't of Justice,*
    882 F.2d 633 (2d Cir. 1989)...........................................................................................37

*Zenith Radio Corp. v. Matsushita Electrical Indus. Co., Ltd.*,
    402 F. Supp. 262 (S.D.N.Y. 1975) ................................................................................44

## Other Authorities

Moore's Federal Practice § 10.02[2][B], at 10-8 (3d ed. 2002) ...................................44

## Statutes

6 Del. C. § 18-804(b)(3)........................................................................................ 46, 47, 48

6 Del. C. § 18-805.........................................................................................................47

28 U.S.C. § 1927..........................................................................................................45

11 U.S.C. §§ 101-1330....................................................................................................6

11 U.S.C. §§ 102(1)(A), 105(a), 107, 108(a)(2), and 546(a) .................................. 7, 10

11 U.S.C. § 107(b) .............................................................................................. 3, 17, 18

11 U.S.C. § 502(d) ...........................................................................................................4

11 U.S.C. § 502(h) ...........................................................................................................4

11 U.S.C. §§ 541, 544, 545, 547, 548, or 549 .................................................................1

11 U.S.C. § 541, 544, 545, 547, 548, or 553 .........................................................7, 10

11 U.S.C. § 546 ................................................................................................ 5, 30, 49

11 U.S.C. § 547 ................................................................................................26, 29, 40, 48

11 U.S.C. § 502(h) ..............................................................................................................4

11 U.S.C.e § 704(7) ........................................................................................................... 18

11 U.S.C. § 1123 ......................................................................................................... 31, 33

11 U.S.C. § 1125 ......................................................................................................... 32, 33

28 U.S.C. § 1927 ............................................................................................................... 50

**Rules**

Fed. R. Bankr. P. 7004(a) and 9006(b)(1)................................................................. passim

Fed. R. Bankr. P. 7004, 9006(c), and 9018 (i) ...................................................... 7, 10

Fed. R. Bankr. P. 7008................................................................................................ 38, 42

Fed. R. Bankr. P. 7012(b) ........................................................................................... 1, 41

Fed. R. Bankr. P. 9006(b)(1).............................................................................................21

Fed. R. Bankr. P. 9018 .......................................................................................... 3, 17, 18

Fed. R. Bankr. P. 9024 ......................................................................................................22

Fed. R. Civ. P. 4(m) ...................................................................................................... passim

Fed. R. Civ. P. 6......................................................................................................... 4, 21

Fed. R. Civ. P. 8......................................................................................................... passim

Fed. R. Civ. P. 10(a) ..........................................................................................................45

Fed. R. Civ. P. 12(b) .................................................................................................. 39, 51

Fed. R. Civ. P. 12(e) ..........................................................................................................42

Fed. R. Civ. P. 15(c)(1)(C)................................................................................................45

Fed. R. Civ. P. 26...............................................................................................................26

Fed. R. Civ. P. 60.................................................................................................................1

Plaintiffs, DPH Holdings Corporation and certain of its affiliated reorganized debtors

(collectively, the "Reorganized Debtors" or "Plaintiffs"), respectfully submit this omnibus

response ("Response") to the motions (the "Motions") filed by certain avoidance action

defendants (the "Movants") seeking, among other forms of relief, orders (I) pursuant to Fed. R.

Civ. P. 60 and Fed. R. Bankr. P. 9024 to vacate prior orders establishing procedures for certain

adversary proceedings, including those commenced by the Debtors under 11 U.S.C. §§ 541, 544,

545, 547, 548, or 549, and extending the time to serve process for such adversary proceedings,

(II) pursuant to Fed. R. Civ. P. 12(b) and Fed. R. Bankr. P. 7012(b), dismissing the adversary

proceedings with prejudice, (III) dismissing the adversary proceedings with prejudice on other

legal and equitable grounds, and/or (IV) alternatively, requiring Plaintiffs to plead their

complaints with more particularity.  For the reasons set forth below, the Motions should be

denied.[1]

## PRELIMINARY STATEMENT

1.      The Orders of this Court that the Movants seek to vacate were substantively

justified, procedurally appropriate and in the best interests of the Debtors, their creditors, and the

---

[1]       In total, 83 threshold Motions have been filed and are responded to herein.  For the
Court's reference, attached to the Declaration of Eric B. Fisher submitted herewith ("Fisher
Declaration") as Ex. A is a chart identifying by name and docket number each defendant that has
filed a threshold motion addressed in this Response.  Due to conflicts, Plaintiffs are represented
in certain actions identified in Ex. B by the law firm of Togut, Segal & Segal LLP.  For the
Court's convenience, attached to the Fisher Declaration as Ex. C is a chart listing the arguments
raised by the movants and assigning each argument to a movant or, more typically, several
movants.  As Ex. C shows, there are certain arguments that are quite common among the
movants.  Those arguments are addressed in pages 16 to 42 of this Response.  Arguments that
are either unique to a certain movant or raised by only a small number of movants are addressed
in the latter portion of this response at pages 42 to 50.  Further, pursuant to the Order
Establishing Certain Procedures with Respect to Pending Motions to Dismiss Adversary
Proceedings (Docket No. 19947), entered on April 27, 2010, this Response does not address
motions to dismiss or joinders to such motions that were filed after May 14, 2010; the procedures
with respect to those motions and joinders, including the objection deadline and hearing date,
will be determined by this Court at a later date.

potential preference defendants. The Orders at issue, which allowed the Debtors to file preference actions under seal and to serve them only if and when it became necessary to do so, enabled the Debtors to preserve their relationships with their suppliers despite a withering economy and the inevitable challenges of reorganization. The Orders benefited the creditors of the Debtors' estates by preserving preference actions in the event that, contrary to initial expectations, it became necessary to prosecute them.

2.    Equally important, the Orders benefited the Debtors' potential preference defendants. These potential defendants were spared the burdens and expense of retaining counsel to defend against claims that the Debtors did not expect they would ever pursue. Further, any entity that received payments from the Debtors within the ninety days prior to bankruptcy should have been on notice that they were subject to suit, and in any event could have asked if they wanted to know for certain. Indeed, this Court's order sealing the preference actions expressly permitted the Debtors to disclose such information to any defendant upon request.

3.    At a recent hearing, this Court specifically noted that many potential preference defendants understood, at least at the time the Orders were entered, that they benefited from those Orders. The Debtors' motion to file their preference actions under seal, the Court stated, was:

> signed off on by the unsecured creditors' committee . . . recognizing that, at the time, the plan was going to pay creditors a hundred cents on the dollar and that it didn't really make sense for creditors to have to hire people . . . to defend them in a situation where it was likely to be moot . . . And it was on very wide notice . . . there were lots and lots of potential recipients of [p]references who got actual notice of it. And there were no objections. Everyone was delighted not to be sued. They understood.

(Transcript, April 1, 2010 at 28, attached to the Fisher Declaration as Ex. D. *See also id.* at 61-63 (discussing the Court's subsequent service deadline extension Orders)).

4.      The Orders that the Movants seek to vacate were not only substantively justified, but also procedurally appropriate.  The Movants complain that the first Order, entered on August 16, 2007, permitted the Debtors to file complaints under seal.  However, as explained in Point I(A) below, the sealing of the complaints was warranted under Bankruptcy Rule 9018 and section 107(b) of the Bankruptcy Code, and was also a proper exercise of this Court's equitable powers.  Moreover, for the sake of argument only, even if the sealing of the preference complaints was not warranted, the proper redress is unsealing them (which has already happened) – not the drastic remedy of dismissal sought by the Movants.

5.      The Court's Orders extending the Debtors' time to serve under Fed. R. Civ. P. 4(m) were also appropriate.  Formal notice of the Debtors' extension requests was not required pursuant to Fed. R. Civ. P. 6, which allows courts to extend a party's time "***with or without motion or notice***" when, as here, the request "is made before the expiration of the period originally prescribed."  Nonetheless, each motion seeking an extension of the service deadline was entered on the docket and served on the Debtors' master service list, so that any claimant against the Debtors or concerned potential defendant could be aware of the issue and participate.

6.      In any event, the applicable rules provide defendants with no genuine grounds to oppose the Debtors' proposed extensions.  As explained in Point I(B) below, an extension is virtually always warranted when, as here, good cause is shown.  Moreover, the Court can grant an extension even without cause.

7.      The Movants' contention that the Court's Orders deprived them of constitutional "due process" also fails.  First, as already explained above, the Orders were justified on the

3

merits and complied with the applicable rules. Next, as set forth in Point II(A) below, the Movants have not established – as they must to support a due process challenge – that they have been deprived of a protected liberty or property interest. The Movants' speculative claims of litigation prejudice fail to pass constitutional muster in that respect. Finally, as explained in Point II(B) below, even if *arguendo* Movants had suffered a constitutional "deprivation," they are now receiving all of the process that they are due. The Movants will not be deprived of any interest in their property until after a full opportunity to litigate accompanied by the protections afforded in the relevant procedural rules.

8.      Nor can the Movants complain that they were wrongly denied the opportunity to participate in the Debtors' bankruptcy case as they purportedly might have done if they had returned their preferential payments and received claims under Section 502(h) of the Bankruptcy Code. *See* Point II(A). The Bankruptcy Code provides no guarantee that a debtor's preference cases will be resolved, or even filed, before its bankruptcy case concludes. *See*, *e.g.*, 11 U.S.C. § 546(a) (permitting debtors to file preference claims up to two years after filing a bankruptcy petition irrespective of whether a plan of reorganization has been confirmed); 11 U.S.C. § 502(d) (disallowing any claims of preference recipients). Indeed, debtors often provide for commencement or prosecution of preference actions after a plan of reorganization has been confirmed. *See* First Amended Joint Plan of Tower Automotive, Inc., at Art. XIII F. 1, *In re Tower Automotive, Inc.*, Case No. 05-10578 (ALG) (Bankr. S.D.N.Y.) (Docket No. 2879); Third Amended Joint Plan of Reorganization of Debtors in Possession at Art. V G. 2, *In re Dana Corp.*, Case No. 06-10354 (BRL) (Bankr. S.D.N.Y.) (Docket No. 6671); Debtors' Revised Joint Plan of Reorganization at Art. IX D. 2(b), *In re Dura Automotive Sys.*, Case No. 06-11202 (KJC) (Bankr. D. Del.) (Docket No. 3317). Moreover, because the Debtors' plan of reorganization was

4

confirmed notwithstanding that the unsecured creditor class voted to reject the plan, the movants' hypothetical additional votes to reject the plan would not have made a difference.

9. The numerous additional arguments that are common among the Movants are equally unavailing. In particular:

- The Movants err in arguing that these cases are barred by the statute of limitations. As explained in Point III below, it is undisputed that these actions were filed before expiration of the statute of limitations, and that service was extended by Orders of this Court upon which Plaintiffs relied. Because there are no legitimate grounds for vacating the Orders, there is no merit to Movants' statute of limitations argument.

- Relying on judicial estoppel and other arguments, a number of the Movants contend that these actions have not been preserved. This argument is without merit. As set forth in Points IV-VI below, the record is perfectly clear that, in connection with confirmation of their plan of reorganization, the Debtors expressly preserved the preference actions at issue in these Motions.

- The Movants' contention that these actions are barred by laches should also be rejected. As discussed in Point VII, there can be no valid laches defense where an action was commenced within the statute of limitations period, as were these cases. Further, as a fact-sensitive affirmative defense not capable of being resolved on the face of Plaintiffs' Complaints, laches cannot properly be considered in the context of these threshold motions.

- Some Movants also argue incorrectly that the preference complaints are inadequately pled. As explained in Point VIII, because the complaints specifically identify the dates and amounts of the transfers at issue, this argument should be rejected. In any event, to avoid unnecessary litigation over this issue, Plaintiffs propose to provide the Movants who have asserted this ground for dismissal with any additional information necessary to allow these Movants to answer the complaints against them. Plaintiffs' proposal is intended to satisfy the requirements of Fed. R. Civ. P. 12(e), moot any claim of inadequate pleading under Fed. R. Civ. P. 12(b)(6), and facilitate the progress of these actions.

10. Finally, the additional arguments raised by certain Movants also lack merit and should be rejected for the reasons set forth below in Point IX.

11.    Accordingly, for all of the foregoing reasons, and as discussed in detail below, the Movants' motion to vacate the Court's Orders, and to dismiss the Plaintiffs' claims against them, should be denied.

## STATEMENT OF FACTS

### A.  The Chapter 11 Filings

12.    On October 8 and 14, 2005, the Debtors' predecessors, Delphi Corporation and certain of its subsidiaries and affiliates, filed voluntary petitions in this Court for reorganization relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330 (the "Bankruptcy Code").  The Debtors continued to operate their businesses and manage their properties as debtors-in-possession under Sections 1107(a) and 1108 of the Bankruptcy Code until they emerged from chapter 11 protection on October 6, 2009.   The Court ordered joint administration of these cases.

13.    Subsequently, the Office of the United States Trustee appointed an official committee of unsecured creditors (the "Creditors' Committee"), an official committee of equity holders (which was subsequently disbanded) and an official committee of retired employees.  No trustee or examiner was appointed in these cases.

### B.  Summary of the Debtors'  Reorganization History and Related Transactions

14.    By August 2007, the Debtors had made significant progress toward confirming a plan of reorganization.  Among other things, the Court had approved the "EPCA" agreement (Docket No. 8856), in which several financial firms committed to fund the Debtors' exit from Bankruptcy Court protection under a plan that paid all allowed unsecured claims in full in cash and plan currency.

6

15.     On December 10, 2007, the Debtors filed their First Amended Joint Plan of Reorganization (Docket No. 11386) and related disclosure statement (the "Disclosure Statement" or "DS") (Docket No. 11388).  Also on December 10, 2007, the Court entered an order (Docket No. 11389) approving the adequacy of the information contained in the Disclosure Statement.

16.     The Disclosure Statement estimated that the Debtors had more than 11,000 potential preference claims totaling almost $6 billion, but added that the Debtors did not intend to pursue these claims in light of distributions to be made under the Plan if and when it was consummated.  (DS at 149-153.)  The Disclosure Statement also indicated that the Court had entered the Order Under 11 U.S.C. §§ 102(1)(A), 105(a), 107, 108(a)(2), And 546(a) And Fed. R. Bankr. P. 7004, 9006(c), And 9018 (i) Authorizing Debtors To Enter Into Stipulations Tolling Statute Of Limitations With Respect To Certain Claims, (ii) Authorizing Procedures To Identify Causes Of Action That Should Be Preserved, And (iii) Establishing Procedures For Certain Adversary Proceedings Including Those Commenced By Debtors under 11 U.S.C. § 541, 544,, 545, 547, 548, Or 553, *see* Docket No. 9105 (the "Preservation of Estate Claims Procedures Order" or "Preservation Order"), which had been sought by the Debtors, to "preserve valuable estate assets in a manner that will not unnecessarily disrupt their prosecution of the Plan or their existing business relationships with potential defendants that are necessary to the Debtors' ongoing operations."  (DS at 148.)  The Disclosure Statement further stated that the Debtors were "authorized (but not directed)" to abandon certain preference claims under the Preservation Order.  (DS at 150.)

17.     The Debtors served the Disclosure Statement upon thousands of parties in accord with the December 10, 2007 Order.  (*See* Affidavit of Service, Docket No. 11972.)  On

December 13, 2007, the Debtors also filed a copy of the Disclosure Statement publicly with their Form 8-K, Docket No. 11388, attached to the Fisher Declaration as Ex. E.

18.     On January 25, 2008, the Court entered an Order (Docket No. 12359) confirming the Plan, as amended (the "Confirmed Plan"). The Confirmed Plan proposed payment in full to the holders of allowed unsecured claims. (Confirmed Plan, Art. 5.3.) The Confirmed Plan was expressly conditioned, however, upon "the Restructuring Transactions contemplated by this Plan," *i.e.*, the closing of the EPCA. (*Id.*, Art. 7.1).) In April 2008, the Debtors announced that the EPCA investors would not close the EPCA transaction.

19.     On October 3, 2008, the Debtors filed a motion to approve modifications to the Confirmed Plan and sought approval of a related disclosure statement and procedures for re-soliciting votes on the Confirmed Plan as modified (Docket No. 14310).

20.     Subsequently, the global economic downturn and an unprecedented decline in global automotive production adversely impacted the Debtors' ability to consummate their modified plan of reorganization.

21.     On June 1, 2009, the Debtors sought an Order approving additional modifications to the Confirmed Plan (the "Modified Plan") as well as a supplemental disclosure and procedures for re-soliciting votes. (Docket No. 16646.) The Court entered the Order, with modifications, on June 16, 2009. Subsequent amending Orders were entered on June 29, July 17 and July 21, 2009 (Docket Nos. 17376, 18352 and 18551).

22.     Also on June 1, 2009, the Debtors reached an agreement allowing them to emerge from chapter 11 through a transaction with Parnassus Holdings II, LLC with support from GM Components Holdings LLC. The Debtors also executed an agreement (the "MDA") to effectuate

the foregoing transactions through a plan of reorganization. The MDA and changes to the Confirmed Plan were filed on June 16, 2009. (Docket No. 17030.)

23.     After an auction conducted in July 2009 pursuant to Court-authorized procedures, the Debtors' directors determined that a "Pure Credit Bid" that the DIP Agent had submitted on behalf of the DIP Lenders was the highest and best bid and approved it. (Docket No. 18658.) Subsequently, the Debtors made certain further modifications to the Modified Plan.

24.     On July 2, 2009, the Debtors filed their Plan Exhibits, including a "Non-Exclusive List of Retained Actions" which stated, among other things, that:

> the Reorganized Debtors shall retain and may (but are not required to) enforce all Retained Actions and all other similar claims arising under applicable state laws, including, without limitation fraudulent transfer claims, if any, and all other Causes of Action of a trustee and debtor-in-possession under the Bankruptcy Code, including, without limitation, all of those claims, Retained Actions, and Causes of Action that are listed in the Debtors' Schedules, as they may have been amended, and any such claims, Retained Actions, and Causes of Action that may have subsequently arisen, that may have subsequently been discovered, or which may be pending.

(Plan Exhibit 7.19, Docket No. 17557, attached to the Fisher Declaration as Ex. F.) All of the actions at issue on these Motions were listed as Retained Actions.

25.     After an evidentiary hearing, the Court entered an order approving the Modified Plan as amended (Docket No. 18707) on July 30, 2009. The Modified Plan reflects concessions made by parties-in-interest to resolve the Debtors' chapter 11 cases. It provides for satisfaction of all administrative, secured and priority claims. It also provides a potential, but dramatically reduced, recovery for holders of general unsecured claims. (Modified Plan, Art. 5.3.)

**C.   History of the Procedures to Preserve Estate Claims**

26.     On August 6, 2007, in view of the impending expiration of applicable statutes of limitation and the time needed for approval and consummation of the EPCA, the Debtors filed

their Expedited Motion Under 11 U.S.C. §§ 102(1)(A), 105(a), 107, 108(a)(2), And 546(a) And Fed. R. Bankr. P. 7004, 9006(c), And 9018 (i) Authorizing Debtors To Enter Into Stipulations Tolling Statute Of Limitations With Respect To Certain Claims, (ii) Authorizing Procedures To Identify Causes Of Action That Should Be Preserved, And (iii) Establishing Procedures For Certain Adversary Proceedings Including Those Commenced By Debtors Under 11 U.S.C. § 541, 544, 545, 547, 548, Or 553 (*See* Docket No. 8905, the "Preservation Motion," attached to the Fisher Declaration as Ex. G.)

27.     The Preservation Motion sought entry of an Order (which would become the Preservation Order, attached to the Fisher Declaration as Ex. H) that (i) allowed the Debtors to file adversary proceeding complaints under seal, (ii) directed the Clerk of Court to delay issuing summonses until the Debtors notified the Clerk of their intent to prosecute the relevant actions, (iii) stayed each adversary action unless and until the Debtors made service of process on the respective defendants, (iv) authorized, but did not direct, the abandonment of certain causes of action, and (v) extended the time by which the Debtors would be required to serve process until March 31, 2008 so that the complaints would not be subject to dismissal under Fed. R. Civ. P. 4(m).

28.     The Preservation Motion explained the Debtors' rationale as follows:

> Sealing the complaints will keep the actions inactive and would be consistent with the Debtors' intention to de-link the sealed adversary proceedings from all other activity in these chapter 11 cases and to prevent their use for any purpose by any party. Thus, sealing should promote the plan process and avoid needless costs relating to actions that remain unnecessary under the Debtors' prospective plan ...

> Moreover, sealing the actions would avoid unnecessarily alarming potential defendants. The Debtors have worked to preserve and repair their business relationship with many of the potential defendants during these cases and have

negotiated or regained favorable credit terms with many suppliers and are
continuing to do so.

(*See* Ex. G, Preservation Motion at ¶ 36, 37.)

29.     At the time, as the Court recently recalled, even potential preference defendants

understood that the Preservation Motion benefited them and not just the Debtors.  The Motion:

> was signed off on by the unsecured creditors' saying that there's a recog-
> nition that there is a two-year statute of limitation and also recognizing
> that, at the time, the plan was going to pay creditors a hundred cents on the
> dollar and that it did not make sense for creditors to have to hire people …
> to defend them in a situation where it was likely to be moot … And it was
> on very wide notice … there were lots and lots of potential recipients of
> [preferences] who got actual notice of it.  And there were no objections.
> Everyone was delighted not to be sued.  They understood.

(*See* Ex. D, Transcript of April 1, 2010 at p. 28.)  Not surprisingly, the Preservation Motion was

unopposed.

30.     In approving the Preservation Order, the Court expressly found good cause:

> let me say for the record, the motion in addition to being unopposed sets
> forth good cause and to the extent you needed good business reasons for
> all the relief that you're seeking here, and that includes the [sea]ling
> portion of it and consequently I'll approve it in full.

(*See* Ex. I, Transcript, August 16, 2007 at p. 11.)  The Court approved the Preservation Order on

August 17, 2007, before entering its final Confirmation Order.  (*See* Ex. H, Preservation Order.)

31.     In September 2007, the Debtors commenced 742 adversary proceedings (the

"Adversary Proceedings") by filing complaints under seal in accord with the Preservation Order

prior to expiration of the Bankruptcy Code's two-year limitations period.

32.     On February 28, 2008, between their entry into the EPCA and its scheduled

closing, the Debtors filed a motion (the "First Extension Motion") to extend their time to serve

their preference complaints.  (*See* Docket No. 12922, Motion for an Order Pursuant to Fed. R.

Bankr. P. 7004(a) And 9006(b)(1) And Fed. R. Civ. P. 4(m) to Extend Deadline to Serve Process for Avoidance Actions Filed in Connection with Preservation of Estate Claims Procedures Order, attached to the Fisher Declaration as Ex. J). In the First Extension Motion, the Debtors stated that they intended to "emerge from chapter 11 as soon as practicable," but sought an extension to "enable [them] to fulfill their fiduciary responsibility to preserve valuable assets in a manner that would not unnecessarily disrupt the emergence process or the Debtors' current business relationships with defendants that are necessary to the Debtors' on-going operations." (*Id.* at ¶ 21.)

33. On March 28, 2008, the Court granted the Debtors' request and extended their time to serve preference complaints until May 31, 2008. (*See* Docket No. 13277, Order Pursuant To Fed. R. Bankr. P. 7004(a) And 9006(b)(1) And Fed. R. Civ. P. 4(m) To Extend Deadline To Serve Process For Avoidance Actions Filed In Connection With Preservation of Estate Claims Procedures Order (the "First Extension Order"), attached to the Fisher Declaration as Ex. K.)

34. On April 10, 2008, after the EPCA failed to close, the Debtors sought a further extension of their time to serve preference complaints. (*See* Docket No. 13361, Motion Pursuant to Fed. R. Bankr. P. 7004(a) And 9006(b)(1) And Fed R. Civ. P. 4(m) To Extend Deadline To Serve Process For Avoidance Actions (the "Second Extension Motion"), attached to the Fisher Declaration as Ex. L.) The Second Extension Motion sought to extend the Debtors' service deadline until 30 days after substantial consummation of the Confirmed Plan or any modified plan. The Court granted this extension by order entered April 30, 2008. (*See* Docket No. 13484, Order Pursuant To Fed. R. Bankr. P. 7004(a) And 9006(b)(1) And Fed. R. Civ. P. 4(m) To Extend Deadline To Serve Process For Avoidance Actions Filed In Connection With

Preservation of Estate Claims Procedures Order (the "Second Extension Order"), attached to the

Fisher Declaration as Ex. M.)

35.     As the Court has recognized, the Debtors did not actively seek to pursue these

actions until after April 2008 for at least two reasons:

> The first, which applied at the time the original motion was entered and
> continued for some time, was the good faith belief shared by all parties …
> that the debtors were on track to confirm and consummate a Chapter 11
> plan that would have paid unsecured creditors in full or with at least
> sufficient value so that it would have made no sense to have actually pur-
> sued avoidance actions or to have caused the defendants in those actions to
> incur any cost in response. That situation pertained at least until April of
> 2008.

(Ex. D, Transcript April 1, 2010 at 61.)

36.     The second reason the Debtors did not pursue their preference actions until after

April 2008 was that, after the EPCA transaction failed to close, it was "not clear … whether [the

EPCA investors] could nevertheless be forced to close or whether the debtors' monetary claims

against them would force them to close as a practical matter." (*Id.* at 62.) The Debtors sought

the Second Extension Order, the Court noted, "in light of that uncertainty." (*Id.*; *see also* Ex. L,

Second Extension Motion at ¶ 22 ("[T]he Debtors believe that the resources that they, the Court,

the Clerk of Court, and the defendants would need to expend … would not be in the best

interests of the Debtors' estates … and other parties-in-interest because most of the Adversary

Proceedings will not be prosecuted if the Plan were to become effective . . . .")) So long as the

uncertainty continued, it remained possible that even the small proportion of the Debtors'

preference actions that remained would never be prosecuted.

37.     On October 2, 2009, while the Debtors' attention and resources were focused on

consummating the Modified Plan and related transactions, the Debtors filed a further extension

motion.  (*See* Docket No. 18952, Motion Pursuant to Fed. R. Bankr. P. 7004(a) And 9006(b)(1) And Fed R. Civ. P. 4(m) To Extend Deadline To Serve Process For Avoidance Actions Filed In Connection With Preservation of Estate Claims Procedures Order (the "Third Extension Motion"), attached to the Fisher Declaration as Ex. N.)[2]  The Third Extension Motion requested an extension of the deadline for serving summonses and complaints until 180 days after substantial consummation of the Modified Plan.

38.    The Court summarized the rationale for the Third Extension Motion as follows:

> It became clear during the course of 2008 that the plan investors were not going to close the plan or a closely similar modified plan and, instead, the debtors turned their attention to a new plan.  During this period, the debtors also narrowed down the number of potential proceedings . . . to 177.  The . . . primary rationale for the prior extension orders no longer applied.  However, the debtors concluded that even with respect to the 177 claims, there may not be a sufficient basis to pursue those claims actively and force any parties to incur additional cost in respect thereto.

> Frankly, by that point in the case, and we're now focusing on the fall of 2009, it was not clear whether the debtors had sufficient funds to even conduct their case let alone pursue adversary proceedings.  And the specter of conversion to Chapter 7 where a Chapter 7 trustee would be pursuing the proceedings was [quite] real.  Consequently, the debtors sought, and the Court granted, a third extension motion . . . .

(*See* Ex. D, Transcript April 1, 2010 at 62-63.)

39.    The Third Extension Motion explained as follows why the Debtors needed more than thirty days after confirmation to serve their preference complaints:

> At the time of the Debtors' request to extend their Fed. R. Civ. P. 4(m) deadline to serve defendants in the Adversary Proceedings until 30 days after substantial consummation of a plan of reorganization, the Confirmed Plan contemplated that the Debtors would maintain essentially the same identity and corporate organization . . . and that the reorganized company

---

[2]    As with the Preservation Motion and First and Second Extension Motions, the Debtors served the Third Extension Motion upon all parties specified in the Case Management Order, Docket No. 18839, attached to the Fisher Declaration as Ex. O.

would retain few causes of action . . . [H]owever, the transaction set forth in the Modified Plan . . . divides the Debtors' business among three separate parties . . . Consequently, the Debtors do not believe that DPH Holdings will be able to evaluate each of the retained Adversary Proceedings – for example, to assess the ongoing relationship with certain defendants and whether events since initiating the Adversary Proceedings have impacted the Proceedings within 30 days after substantial con-summation of the Modified Plan . . . In turn, defendants who are parties to Retained Adversary Proceedings . . . could be forced to unnecessarily incur litigation expenses associated with the defense of such Adversary Proceedings.

(Ex. N, Third Extension Motion at ¶¶ 17-18.)  On October 22, 2009, the Court entered an Order granting the Third Extension Motion.  (*See* Docket No. 18999, Order Pursuant To Fed. R. Bankr. P. 7004(a) And 9006(b)(1) And Fed. R. Civ. P. 4(m) To Extend Deadline To Serve Process For Avoidance Actions Filed In Connection With Preservation of Estate Claims Procedures Order (the "Third Extension Order"), attached to the Fisher Declaration as Ex. P.)

40.     On March 25, 2010, the Debtors filed a motion seeking, among other things, to extend their time to serve preference complaints upon certain defendants, including certain foreign defendants.  (*See* Reorganized Debtors' Emergency Motion for Order under Section 105(a) of the Bankruptcy Code, Fed. R. Bankr. P. 7004(a) and 9006(b)(1), and Fed. R. Civ. P. 4(m) Extending Deadline to Serve Process for Certain Avoidance Actions, attached to the Fisher Declaration as Ex. Q.)  Among other arguments, the Debtors explained that, even though Rule 4(m) does not apply to foreign defendants, they sought the relief as a precaution "due to the complex nature of effectuating service on Foreign Defendants in accordance with the Hague Convention or the Inter-American Convention, as applicable." *Id.* at 11.  On April 20, 2010, the Court granted the Motion and, along with other relief, extended the time for the Debtors to serve preference complaints upon foreign Defendants through and including December 1, 2010.  (*See* Order under Section 105(a) of the Bankruptcy Code, Fed. R. Bankr. P. 7004(a) and 9006(b)(1),

and Fed. R. Civ. P. 4(m) Extending Deadline to Serve Process for Avoidance Actions against Certain Foreign Defendants, attached to the Fisher Declaration as Ex. R.)

41. The Debtors have obtained summonses in all of the retained adversary proceedings and, consistent with the Court's prior Orders, have served or, in certain exceptional cases are attempting to serve,[3] the defendants.

## ARGUMENT

## I. THIS COURT'S PRESERVATION AND EXTENSION ORDERS COMPLIED WITH THE APPLICABLE RULES

42. In entering the Orders now challenged by the Movants, this Court properly exercised its powers, acting in a manner that was consistent with the applicable rules and Bankruptcy Code provisions.

### A. THE COMPLAINTS WERE PROPERLY FILED UNDER SEAL

43. Movants argue that the first Order entered by this Court with respect to these preference actions (the Preservation Order) improperly permitted the sealing of the complaints. In particular, Movants argue that the complaints were not "commercial information" eligible for protection under section 107(b)(1). *See, e.g.*, Motion of Hewlett-Packard Company and Affiliates (07-02449), at pp. 27-28. As explained below, Movants' argument lacks merit, and this Court properly authorized the sealing of the complaints under the applicable rules and pertinent case law.

44. According to Bankruptcy Rule 9018, "[o]n motion or on its own initiative, ***with or without notice***, the court may make any order which justice requires (1) to protect the estate or any entity in respect of a trade secret or other confidential research, development or commercial

---

[3] Efforts to serve foreign defendants are continuing in accord with applicable conventions and statutory provisions.

information . . . ." (emphasis added). Further, under section 107(b)(1) of the Bankruptcy Code, "the bankruptcy court shall . . . protect an entity with respect to a trade secret or confidential research, development, or commercial information . . . ." The Second Circuit has held that a party seeking the mandatory sealing of information is required only to show that the information is confidential and commercial, and no showing of "good cause" is necessary. *In re Orion Pictures Corp.*, 21 F.3d 24, 28 (2d Cir. 1994) (further explaining that § 107(b) of the Bankruptcy Code and Rule 9018 of the Bankruptcy Rules do "not require that commercial information be the equivalent of a trade secret before protecting such information"); *In re Global Crossing Ltd.*, 295 B.R. 720, 723 n.7 (Bankr. S.D.N.Y. 2003) (court required to seal information "upon the motion of a party in interest, assuming the information is of the type listed in section 107(b)").

45.     As the *Global Crossing* court explained, the "whole point of [Bankruptcy Rule 9018] is to protect business entities from disclosure of information that could reasonably be expected to cause the entity commercial injury." *Global Crossing*, 295 B.R. at 725; *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598-99 (1978) (stating that the decision as to disclosure of information is best left to the trial court's discretion, "to be exercised in light of the relevant facts and circumstances of the particular case," and that courts may exercise such discretion to prevent records from becoming "sources of business information that might harm a litigant's competitive standing").

46.     Even where information does not fit squarely within the categories specified in Bankruptcy Rule 9018 or section 107(b)(1), the Court may exercise its inherent equitable authority to order the sealing of information. *See, e.g., In re Bennett Funding Group, Inc.*, 226 B.R. 331, 336 (Bankr. N.D.N.Y. 1998) ("If the information [sought to be protected] does not represent trade secrets or confidential research, development or commercial information, then

whether to permit access to the information is left to the Court's discretion."). The power to seal

also arises from the inherent power of the court to control dissemination of its records. *See In re*

*Robert Landau Assocs., Inc.*, 50 B.R. 670, 676, 677 (Bankr. S.D.N.Y. 1985) (noting that a

court's inherent power to seal, despite § 107(b)'s inapplicability, is implicit in § 704(7)'s

exception to disclosure – "unless the court orders otherwise"); *In re I.G. Servs. Ltd.*, 244 B.R.

377, 388 n. 14 (Bankr. W.D. Tex. 2000) (recognizing court's power to control dissemination of

information beyond the scope of § 107), *rev'd on other grounds sub nom. In re Blackwell,* 263

B.R. 505 (Bankr. W.D. Tex. 2000); *In re Apex Oil Co.*, 101 B.R. 92, 101-02 (Bankr. E.D. Mo.

1989) (citing *Robert Landau Assocs.,* 50 B.R. 670); *In re EPIC Assocs. V*, 54 B.R. 445, 450

(Bankr. E.D. Va. 1985) (exercising inherent supervisory power over its own records and file).

47.    When deciding to allow a debtor to file documents under seal, courts should look

at all relevant facts and circumstances and weigh the competing interests of the debtor seeking

protection with the general right of the public to access documents filed in a bankruptcy case.

*Bennett Funding*, 226 B.R. at 336. Relevant factors include (1) whether the debtor will suffer

irreparable harm if the information is disclosed, (2) whether the debtor can demonstrate that

disclosure will have a negative impact on its estate such that the debtor would be at a

disadvantage in comparison with competitors, and (3) whether the debtor is seeking to protect

the information on a temporary basis or on a permanent basis. *See generally In re Hemple*, 2*95*

*B.R. 200, 202 (*Bankr. D. Vt. 2003).

48.    Here, the purpose of the sealing provision in the Preservation Order was "to

preserve [the 742 adversary proceedings] while otherwise preserving the status quo among all

parties in interest," *see* Ex. H, Preservation Order at  ¶ 16; to prevent disruption of "the plan

process or the Debtors' existing business relationships with potential defendants that are

necessary to the Debtors' ongoing operations," *see id.* at ¶ 18; to prevent hundreds of potential defendants from having to expend resources unnecessarily in response to the adversary proceedings, *see id*; to preserve the Debtors' ability to secure improved credit terms and to continue to negotiate favorable credit terms with their suppliers, *see id.* at ¶ 37; and "to avoid unnecessary harm to the Debtors and others that would be caused by filing these complaints publicly," *see id.* at ¶ 53.

49.     At the time the Preservation Order was entered, the parties-in-interest to the Debtors' chapter 11 proceedings anticipated that any reorganization plan would have provided payment in full to creditors and, accordingly, would have altogether obviated the need to pursue preference cases.  Against this backdrop, and in light of the potentially significant harm that would likely have befallen the Debtors' supplier relationships if the complaints were not sealed, the Court appropriately authorized the sealing of the complaints.  In so ruling, the Court expressly found that the Debtors' motion established "good cause" for sealing the complaints, even though such a showing was not strictly necessary.  (Ex. I, Transcript, August 16, 2007, at p.11.)

50.     Moreover, the Preservation Order contained an express provision allowing the Debtors to disclose a copy of the complaint to any particular named defendant.  (*See* Ex. H, Preservation Order at ¶ 7  ("This order shall not preclude the Debtors, in their sole discretion, from making a copy of a complaint or amended complaint available to parties; provided that the Debtors maintain an internal record that they, and not the Clerk, made the complaint or amended complaint available.")).   After entry of the Preservation Order, a number of defendants inquired whether they had been named in a sealed complaint and were provided with this information. This provision in the Preservation Order demonstrates the manner in which the Court carefully

balanced the need to seal the actions with the potential interests of certain defendants in limited disclosure. Of course, as to most of the named preference defendants, the Debtors have elected not to pursue the vast majority of preference cases that were filed at the time of the Preservation Order.

51. In any event, even if *arguendo* the Preservation Order authorizing Plaintiffs to file the adversary actions under seal was erroneous, the proper remedy would require *unsealing* the complaints – not the drastic remedy of dismissal urged by the Movants. *See Spano v. Boeing Company*, No. 3:06-cv-00743, 2008 U.S. Dist. LEXIS 54122, *5 (S.D. Ill. July 16, 2008) ("[T]he Court will issue an order unsealing the documents improperly filed under seal in this action, unless the parties demonstrate . . . why the documents should remain sealed."); *see also In re: Neal*, 461 F.3d 1048 (8th Cir. 2006) (reversing, among other things, bankruptcy court's order sealing debtor's list of creditors). Thus, even if the Movants' arguments about improper sealing had merit, the Movants have already obtained all of the relief to which they are entitled, now that the preference complaints have been unsealed and served.

52. Moreover, any argument that the Movants should have received notice of the complaints when filed should be rejected. *See also* Fed. R. Bankr. P. 9018. The Movants have not cited a single case to support such a requirement. A defendant typically receives notice of a lawsuit against it when it is served with the complaint, not when the complaint is filed with the court. That is precisely what happened in these avoidance actions.

## B. THE COURT PROPERLY EXTENDED THE DEADLINES FOR SERVING THE COMPLAINTS IN THESE ACTIONS

53.     This Court properly granted the service deadline extensions, which allowed the Plaintiffs to defer serving the preference complaints until after consummation of the Debtors' plan of reorganization. Fed. R. Civ. P. 4(m) requires the court to extend the period for service of process after the filing of a complaint upon a showing of good cause. *See Bank of Cape Verde v. Bronson*, 167 F.R.D. 370, 371-72 (S.D.N.Y. 1996) (finding that good cause existed when future events would have likely "obviated the need to serve the [] complaint" and when plaintiff requested extension before the deadline under Fed. R. Civ. P. 4(m) expired). Further, Bankruptcy Rule 9006(b)(1) provides for the enlargement of time "for cause shown" to perform acts required under the Bankruptcy Rules.

54.     Moreover, where, as here, there is good cause for the extensions under Rule 4(m), no notice is necessary. Fed. R. Civ. P. 6(b)(1)(A) provides: "When an act may or must be done within a specified time, the court may, for good cause, extend the time . . . with or without motion or notice if the court acts, or if a request is made, before the original time or its extension expires." *See also Galdi v. Jones*, 141 F.2d 984, 992 (2d Cir. 1994) (affirming trial court's *ex parte* order enlarging defendant's time period within which to move or plead); *Boston Post Rd. Med. Imaging, P.C. v. Allstate Ins. Co.*, 221 F.R.D. 410, 414 n.20 (S.D.N.Y. 2004) (permitting *ex parte* application for extension of time when "made before the expiration of the period originally prescribed"); *Rampersad v. Deutsche Bank Securities, Inc.*, No. 02-Civ-7311, 2003 U.S. Dist. LEXIS 7861, at *1-4 (S.D.N.Y. May 9, 2003) (granting extension under Rule 4(m) *ex parte* when plaintiff was unable to determine a defendant's residence or place of business); *Dayton Monetary Assoc. v. Donaldson, Lufkin & Jenrette Sec. Corp.,* No. 91 civ. 2050, 1992 U.S. Dist.

LEXIS 12283, at *22 n.8 (S.D.N.Y. Aug. 11, 1992) (rejecting defendant's challenge to Rule 4 extensions, granted upon *ex parte* applications, because "Rule 6(b)(1) explicitly provides that such applications are properly made without notice").[4]

55.     This Court's orders deferring service of the preference complaints upon the Movants, and the other preference defendants, were necessary for fundamentally the same reasons that justified filing the complaints under seal. Thus, even though "good cause" is not strictly necessary to extend the deadline for service of a complaint, the Court expressly found that "good cause" for the relief had been established. (*See* Ex. I, Transcript, August 16, 2007 at p.11).

56.     By permitting the Debtors to timely file the adversary proceedings, but to defer serving process on defendants, this Court enabled the Debtors to avoid commercial injury and pursue ongoing business operations through preservation of their supply base, and to continue developing a plan of reorganization that would allow the Debtors to emerge from chapter 11.[5] Further, by ordering the service deadline extensions, the Court spared the defendants in 565 of the 742 avoidance actions initially filed under seal from having to mobilize needlessly to defend litigation that has never been – and will never be – commenced. Thus, even though the flagging economy and the hardships faced by the automotive industry required the Debtors on multiple

---

[4]     Even absent good cause, however, this Court has discretion to extend the 120-day service period. *Mejia v. Castle Hotel, Inc.*, 164 F.R.D. 343, 345 (S.D.N.Y. 1996); s*ee also Oyama v. Sheehan (In re Sheehan)*, 253 F.3d 507, 511 (9th Cir. 2001) ("The time for service in an adversary proceeding may be extended under two different rules: Rule 4(m) of the Federal Rules of Civil Procedure, and Bankruptcy Rule 9006(b).").

[5]     Similar relief was granted in *In re Ames Dep't Stores, Inc.*, No. 01-42217 (REG) (Bankr. S.D.N.Y. Feb. 3, 2004). *See* Order Extending Time for Service of Process With Respect to Certain Preference Actions (Docket No. 2524) (extending service of process deadline against certain defendants so that plaintiffs could determine if it was necessary to proceed).

occasions to modify, and in some instances rework, their reorganization plan during the Chapter 11 process, this Court's deferral of the service deadline until after consummation of a reorganization plan enabled the Debtors to achieve for themselves and myriad other parties-in-interest the fundamental objective of avoiding the costs and burdens of needless litigation.

## II. THIS COURT'S PRESERVATION ORDERS DID NOT VIOLATE DUE PROCESS

57. Movants argue without supporting authority that the combination of sealing the complaints and extending the service deadline pursuant to the Preservation and Extension Orders has "resulted in a proceeding completely devoid of due process." *See* Memorandum of Law in Support of Motion of Affinia Group Defendants (07-02198), p.12. For the reasons set forth below, this due process argument has no merit.

58. The due process clause proscribes the "deprivation of life, liberty or property by adjudication" without prior "notice and opportunity for hearing appropriate to the nature of the case." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950). To prevail on a procedural due process claim, a litigant must show (1) that the state deprived him of a protected interest in life, liberty, or property and (2) that the deprivation occurred without due process of law. *See Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989); *Reynolds v. Wagner*, 128 F.3d 166, 179 (3d Cir. 1997); *see also Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 571 (1972) (the first question in the procedural due process analysis is whether the government has interfered with a liberty or property interest belonging to the claimant). Here, neither prong is satisfied; accordingly, the due process challenge to this Court's Orders fails.

## A. THE MOVANTS HAVE NOT BEEN DEPRIVED OF A PROTECTED INTEREST

59.     As a threshold matter, Movants fail to establish a due process violation because the Orders have not deprived them of any identifiable liberty or property interest.  *See Mullane*, 339 U.S. at 313 (noting that lack of notice and opportunity to be heard, in the absence of a deprivation, does not constitute a due process violation).  Indeed, to the extent that Plaintiffs prevail in any particular preference action and obtain a judgment against a defendant, such judgment will follow an adjudication of the case with all of the protections afforded by the Federal Rules of Bankruptcy Procedure.  *Sutera v. Transp. Sec. Admin.*, No. 09-cv-2351, 2010 U.S. Dist. LEXIS 42759, at *18 (E.D.N.Y. Apr. 29, 2010) ("[T]he 'essential principle' of procedural due process is that a deprivation of life, liberty, or property be preceded by notice and an opportunity to be heard.").

60.     Movants argue that they have been prejudiced by the sealing and delay in service of the complaints, and improperly seek to elevate such claims of prejudice to the level of a constitutional deprivation.  It does not rise to that level.  For the most part, the Movants argue, like the Affinia defendants, that because these preference actions were under seal until after expiration of the statute of limitations, the Movants took no "special steps to organize and preserve [their] records with respect to Delphi, to hold exit interviews with employees who were knowledgeable about the Delphi business relationship or to make arrangements to keep in touch with those employees."  Affinia Group Defendants' Mem. of Law (07-02198), at pp.8-9.  Such assertions of prejudice are premature, conclusory and speculative, and do not rise to the level of a deprivation sufficient to invoke the protections of the due process clause.  Movants do not point

to a single case in which a comparable claim of prejudice gave rise to a constitutional "deprivation."[6]

61.     Movants' claims of prejudice are premature because it remains to be seen whether any particular documents or other information necessary to their defenses are, in fact, now irretrievable.  Although there have been informal exchanges of information in a number of these preference cases, there has not yet been any formal discovery.  Accordingly, Movants' generalized assertions about the possible loss of relevant information are, at best, premature.  *See generally Slim CD, Inc. v. Heartland Payment Sys., Inc.*, No. 06-2256, 2007 U.S. Dist. LEXIS 62536, at *15 (D.N.J. Aug. 22, 2007) (motion to dismiss "at this early date prior to discovery, would be premature."); *In re: FEMA Trailer Formaldehyde Prods. Liability Litigation*, MDL No. 07-1873 Section "N", 2008 U.S. Dist. LEXIS 103249, at *22 (E.D. La. Dec. 12, 2008) (". . . Plaintiffs have indeed pled sufficient allegations . . . to survive a motion to dismiss.  The Court finds that Plaintiffs should be afforded an opportunity to prove the existence of [the facts supporting their claim].  If discovery reveals no evidence of such representations, then this issue might be revisited via a properly supported dispositive motion.  However, dismissal at this juncture is inappropriate."); *Nat'l Lawyers Guild v. Attorney General of the United States*, No. 77 Civ. 0999, 1980, U.S. Dist. LEXIS 13188, at *7 (S.D.N.Y. Aug. 14, 1980) ("Discovery has as its purpose the investigation of claims and the finding of evidence in support of claims."); *Cole v.*

---

[6]     All of the cases cited by Movants are easily distinguished because they concern the permanent loss of a tangible right or property interest.  *See, e.g.*, *City of New York v. New York, N.H. & H. R. Co.*, 344 U.S. 293 (1953) (claimant not notified of bar date for filing proof of claim); *In re Johns Manville Corp.*, 600 F. 3d 135 (2d Cir. 2010) (insurer not bound by settlement as to which it did not receive notice); *Great Pacific Money Mkts., Inc. v. (In re Krueger)*, 88 B.R. 238 (BAP 9th Cir. 1988) (foreclosure sale not valid where debtor had no notice of sale).  Here, in contrast, no Movant has yet been deprived of any property right.  Any such deprivation will only come after a proceeding in which the Movant will have all of the protections afforded in adversary proceedings in bankruptcy court.

*Allen*, 3 F.R.D. 236, 238 (S.D.N.Y 1942) (denying motion for entry of order directing plaintiff to serve bill of particulars where, "the particulars requested . . . [were] not necessary to enable defendants to answer. The information sought, if relevant and not privileged, [could] be obtained under Rule 26 . . . .").

62.     Moreover, the risk of actual prejudice to Movants due to the unavailability of evidence is remote. The affirmative defenses available to the Movants under Bankruptcy Code § 547(c) are primarily based upon routine documents evidencing the payment history between the parties. For example, the defenses of ordinary course of business, contemporaneous exchange, and exchange for subsequent new value are typically proven through documentation/information memorializing the preference transactions. Plaintiffs have retained such basic documentation with respect to these actions, even if the Movants have not; and the Movants will obtain such information during discovery, thereby eliminating any purported prejudice in the event that Movants have lost or destroyed such information. Further, any argument about the unavailability of witnesses, who were formerly employed by the Movants and have knowledge of the underlying facts in a particular action, should be viewed in light of the Movants' failure to show that any such witness would be essential to their defense. *See also In re: Southern Technical College, Inc.*, No. 92-410955, 1994 Bankr. LEXIS 1461, at *3 (Bankr. E.D. Ark. Aug. 19, 1994) (denying defendants' motion to transfer case based in part on the location of witnesses where the underlying action "appear[ed] to be only a simple preference action, [and] the Court [could not] conceive of the nature of [the witnesses'] testimony or with regard to what issues such testimony could be necessary.").

63.     Of course, there may be exceptional cases and, to the extent that any Movants establish specific prejudice as these cases progress, this Court may fashion relief to address any

such problems. For example, the Court could tailor a remedy with respect to a specific transaction if a proper showing is made that documents necessary to defend against a claim were lawfully destroyed or lost after expiration of the statute of limitations. The draconian remedy of dismissal, however, is disproportionate to the alleged problem and without precedent in the case law.

64.     It is impossible, therefore, to conclude so early on in these actions that any of the Movants cannot sufficiently defend the preference claims due to the loss of relevant information. To be clear, Movants will have an opportunity to argue that they have been prejudiced and for the Court to rule on such arguments based upon a complete record in the context of summary judgment. Alternatively, claims that Movants have been prejudiced by the loss of relevant information can be addressed in the context of pretrial evidentiary motions. That time, however, is not now in the context of these threshold motions.

65.     The Court should greet Movants' claims to have lost or destroyed relevant information with a certain amount of skepticism. The transactions at issue in these cases took place less than five years ago. While there certainly may be specific cases in which relevant information has been lost or destroyed, such claims of prejudice should be supported by particularized showings of prejudice. The Movants also must demonstrate that such information was lost or destroyed after expiration of the two-year statute of limitations. To the extent the information was lost or destroyed before the two-year period expired, Movants are no worse off than they would have been had these cases been served during the limitations period. Any such specific claims of prejudice may be addressed in the future through tailored relief to be fashioned by this court on a case-by-case basis, and not through wholesale dismissal based on conclusory, speculative and premature assertions of prejudice.

66.     Some Movants argue that they have been deprived of a constitutionally protected liberty or property interest because they were "disenfranchised" and unable to vote on the Debtors' plan of reorganization. *See, e.g.*, Wagner Smith Motion (Adv. Pro. No. 07-02581), at p. 16. These Movants speculate that they would have returned the preferences to the Debtors upon receiving earlier notice of these avoidance actions and, in doing so, would have been able to vote on the plans that the Debtors were then attempting to develop during their reorganization process. By not receiving such notice, the Movants suggest that they were disenfranchised.

67.     Even assuming that the Movants would have willingly returned the preferences to the Debtors upon receiving notice of these actions, which is both questionable and speculative, they have failed to establish that their votes, if cast during the reorganization process, would have had any effect on the Modified Plan, which the Debtors ultimately consummated. Specifically, the Movants have not shown that their votes would have prevented the Debtors from retaining and prosecuting these avoidance actions. The Movants' failure to establish any prejudice or deprivation in this respect is fatal to their disenfranchisement argument. *See, e.g.*, *Galerie Des Monnaies of Geneva, Ltd. v. Deutsche Bank* (*In re Galerie Des Monnaies of Geneva, Ltd.*), 55 B.R. 253, 258-59 (Bankr. S.D.N.Y. 1985) (rejecting a similar disenfranchisement argument in an adversary proceeding because defendant failed to establish that, had it voted on the reorganization plan, its vote would have resulted in non-retention of the subject preference action), aff'd, 62 B.R. 224 (S.D.N.Y. 1986). The Modified Plan was confirmed, notwithstanding that the unsecured creditor classes voted to reject the plan; thus,

additional votes rejecting the plan would have been immaterial to the outcome, and the Modified Plan still would have been confirmed.[7]

68.     Thus, for the reasons set forth above, Movants' due process arguments should be rejected. Movants have failed to establish any deprivation sufficient to invoke the protections of the Fifth Amendment.

### B.     ASSUMING ARGUENDO THAT THERE WAS A DEPRIVATION, NOTICE WAS ADEQUATE UNDER THE CIRCUMSTANCES

69.     Even if the delay in prosecuting these cases constituted a deprivation for due process purposes – which it does not – there is still no due process violation here because reasonable steps were taken to provide notice to all parties of the proposed procedures for the preservation of these cases. Several Movants or their affiliates were served with the Preservation Motion and subsequent Extension Motions. Those motions were served on the Master List and filed on the Debtors' case docket.[8]

---

[7]     The debtor in *Galerie Des Monnaies* did not file its preference action against defendant-bank until the day of plan confirmation. The bank claimed that it was disenfranchised because it was unable to relinquish the alleged preferences to the debtor's estate and vote on the plan as a creditor. The Court rejected the bank's argument, noting that the bank's principal prejudice was that "it would have to return money it was not entitled to under § 547 of the Code," and that such prejudice was insufficient to bar the debtor's preference claim. The Court further explained that the bank would have to show more substantial prejudice, *e.g.*, that Defendant's vote would have resulted in non-acceptance of the reorganization plan retaining the subject adversary proceeding.

[8]     Such service was made upon at least the following entities: A 1 Specialized Svc. & Supp. Inc. (07-02084, 07-02096), Ambrake Corporation (07-02201), ATS Automation Tooling Systems Inc. (07-02125), Barnes Group Inc. (07-02182), Robert Bosch Corporation (07-02800), Calsonic Kensei North & Calsonic Harrison Co., LTD. (07-02282), Decatur Plastic Products Inc. (07-02098), Doshi Prettl International (07-02211), Electronic Data Systems LTD and EDS Information Systems (07-02262), Hewlett Packard Company and Hewlett Packard Financial Svcs. (07-02449), M & Q Plastic Products (07-02743), Niles USA, Inc. (07-02414), Republic Engineered Products and Republic Eng. Products (07-02744), Setech Inc. (07-02619), Sumitomo Corporation (07-02659), Timken Corporation (07-02688), Universal Tool & Engineering Co. Inc., and MG Corporation (07-02505), Vanguard Distributors Inc. (07-02551), Victory

70.     Further, information about these procedures was entered on the docket and publicly disclosed in the Disclosure Statement filed with the Debtors' form 8-K.  In the Disclosure Statement, the Debtors expressly provided that, although under the Plan they did not intend to pursue avoidance actions other than those specifically listed on Plan Exhibit 7.24, *see* Docket No. 11608, attached to the Fisher Declaration as Ex. S, as a precautionary measure, they preserved the avoidance actions (*i.e.*, those not specifically listed on Exhibit 7.24) pursuant to the procedures set forth in the Preservation Order.  (*See* Ex. E, Disclosure Statement, p. 149.)  The Debtors also set forth in detail the Preservation Order procedures, including, without limitation, the sealing of the adversary complaints and the initial extension of the deadline for serving those complaints, "without prejudice to the Debtors' right to seek further extensions of the deadline." *Id.* at 149-51.  Therefore, having received transfers from Delphi during the preference period, the Movants knew or should have known as a matter of public record that they could become subject to a preference action if the Debtors failed to consummate the plan of reorganization that had been proposed at the time.

71.     Finally, the Orders allowed parties to inquire whether they had been named as defendants in the preference cases.  *See, e.g.*, Preservation Order, at ¶ 7 ("This order shall not preclude the Debtors, in their sole discretion, from making a copy of a complaint or amended complaint available to parties; provided that the Debtors maintain an internal record that they, and not the Clerk, made the complaint or amended complaint available.")  No Movant claims to have been denied information after making such an inquiry, although a number of other

---

Packaging (07-02551), Valeo entities (07-02534), and Sumitomo Corporation (07-02659).  In addition, Auto Camm Corporation (07-02135) received service of the three Extension Motions, and Tyco Electronics Corporation (07-02790) received service of the Third Extension Motion. (*See* Affidavits of Service for Preservation Motion and three subsequent Extension Motions, Docket Nos. 9039, 12970, 13415 and 18966, respectively.)

defendants did avail themselves of this opportunity and were provided with the information they requested.

## III.  PLAINTIFFS COMPLIED WITH THE STATUTE OF LIMITATIONS

72.     Movants contend that the Debtors failed to comply with the two-year statute of limitations set forth in section 546(a) of the Bankruptcy Code.  This argument is without merit. Each of the preference complaints was filed before expiration of the statute of limitations, and Movants do not – and cannot – contend to the contrary.

73.     As Movants concede, the statute of limitations argument advanced by the Movants is contingent upon their attack on the Orders entered by this Court.  If those Orders are not vacated, there is no basis on which to argue that these cases are untimely, because those Orders permitted the Debtors to defer service of the timely-filed preference complaints until April 2, 2009.  In proceeding as they did in these cases, the Debtors relied upon those Orders, which were justified under the applicable rules and, as already explained above, entered after widespread notice to parties in interest through service upon the master service list, entry on the public docket and other public filings, such as the Debtors' Form 8-K.

74.     Those Orders expressly permitted these preference complaints, which indisputably were filed within the two-year limitations period, to remain under seal and unserved until April 2, 2009.  Accordingly, the argument that these cases are being pursued in violation of the statute of limitations is without basis.[9]

---

[9]     Even in the context of criminal proceedings, courts have permitted the prosecution of cases that were not unsealed until after expiration of the applicable statute of limitations.  *See, e.g., U.S. v. Sharpe*, 995 F.2d 49, 51 (5th Cir. 1993) ("The other circuits are uniform in holding that 'when a sealed indictment is not opened until after the expiration of the statute of limitation, the statute ordinarily is not a bar to prosecution if the indictment was timely filed.'") (citations omitted); *U.S. v. Edwards*, 777 F.2d 644, 647 (11th  Cir. 1985) (refusing to dismiss indictment

## IV. THESE ACTIONS WERE EXPRESSLY RETAINED AND PRESERVED

75.     Certain Movants erroneously contend that Plaintiffs failed to preserve their claims in the Disclosure Statement and Modified Plan. They are simply wrong. Plaintiffs have preserved those claims because they were expressly retained in the Disclosure Statement and Modified Plan, and as demonstrated below, the Movants' *res judicata* arguments fail.

76.     Under section 1123(b)(3) of the Bankruptcy Code, a plan "may provide for (A) the settlement or adjustment of any claim or interest belonging to the Debtor or to the estate; or (B) the retention and enforcement by the Debtor, by the trustee, or by a representative of the estate appointed for such purpose, of any such claim or interest . . . ."

77.     Here, in the Modified Plan and related Disclosure Statement – both of which were approved by the Court as containing "adequate information" under Section 1125 – Plaintiffs expressly preserved the preference claims at issue in these Motions. Exhibit 7.19 to the Modified Plan provides, in pertinent part:

> In accordance with section 1123(b)(3) of the Bankruptcy Code and except as otherwise provided in section 7.19 of the Plan, the Reorganized Debtors shall retain and may (but are not required to) enforce all Retained Actions and all other similar claims arising under applicable state laws, including, without limitation, fraudulent transfer claims, if any, and all other Causes of Action of a trustee and debtor-in-possession under the Bankruptcy Code, including, without limitation, all of those claims, Retained Actions, and Causes of Action that are listed in the Debtors' Schedules, as they may have been amended, and any such claims, Retained Actions, and Causes of Action that may have subsequently arisen, that may have subsequently been discovered, or which may be pending. The Debtors or the Reorganized Debtors, in their sole and absolute discretion, shall determine whether to bring, settle, release, compromise, or enforce such Retained Actions (or decline to do any of the foregoing), and shall not be required to seek further approval

filed before lapse of statute of limitations, although sealed beyond expiration of limitations period).

of the Bankruptcy Court for such action. The Reorganized Debtors
or any successors may pursue such litigation claims in accordance
with the best interests of the Reorganized Debtors or any successors
holding such rights of action.

For the avoidance of any confusion, the Debtors and reorganized
Debtors or any successors holding such rights of action expressly
retained, among other rights of action:

. . .

6. Any and all claims, causes of actions, rights of actions, suits, and
proceedings in favor of the Debtors or their estates against the
Defendants in the following Adversary Proceedings . . . .

(*See* Ex. F, Ex. 7.19 to Modified Plan.)

78.     Even though Plaintiffs did not expressly mention the Movants by name, they

reserved their right to pursue these adversary proceedings, including the very cases involving the

Movants. This put the Movants on notice that Plaintiffs' claims might be pursued. These

express reservations easily satisfy the claim preservation requirements of the Bankruptcy Code.

*See*, *e.g*, *Cohen v. TIC Financial Sys. (In re Ampace Corp.)*, 279 B.R. 145, 159 (Bankr. D. Del.

2002) (where Debtor preserved right to pursue "all avoidance actions . . ." in disclosure

statement those claims were preserved, even though the specific individual Defendant was not

specifically identified.); *In re Appel Corp.*, 300 B.R. 564, 568 (S.D.N.Y. 2003) (general

reservation of rights regarding a specific category of claims is sufficient), aff'd, 104 Fed. Appx.

199 (2d Civ. 2004). *P.A. Bergner & Co. v. Bank One (Matter of P.A. Bergner & Co.)*, 140 F.3d

1111, 1117 (7th Cir. 1998) ("The courts that have spoken of the need for 'specific' and

'unequivocal' language have focused on the requirement that plans unequivocally retain claims

of a given type, not on any rule that individual claims be listed specifically."); *In re Perry H.*

*Koplik & Sons, Inc.*, 357 B.R. 231, 246 (Bankr. S.D.N.Y. 2006) (following the holdings in *Apple* and *Ampace*, *supra*).

79.     *Ampace* is particularly instructive on this point.  In *Ampace*, the defendants claimed that the Debtor's preference claims were barred because they were not preserved in the disclosure statement and plan in that the specific claim and identity of the defendant were not expressly referenced.  However, both the plan and disclosure statement expressly provided that "all avoidance actions . . . are preserved and retained for enforcement . . . ." 279 B.R. at 159. After noting that Section 1123 did not require the debtor to provide for the retention of certain causes of action, the Court concluded that "this statement clearly evinces the plan proponents' intent to preserve the right to pursue and enforce preference actions for the trustee and as such, satisfies the statutory requirements of both Section 1123(b)(3) and 1125." *Id* at 159-160.  The Court held that the Plaintiff/Debtor had preserved its preference claims.  *Id*.

80.     The Court also noted that creditors who are potential targets of a preference action should know the value of the potential claim:

> Furthermore, with respect to those creditors who were the potential targets of a preference action, such creditors know, or should know, whether or not they received a payment from the debtor within the 90 days preceding the petition date.  As such, when a plan or disclosure statement contains a general reservation of a trustee's right to pursue "preference actions" or "avoidance actions" post confirmation, those creditors also know that there is a possibility that they may be a target of one of those actions.  Such is the case here.  Defendant knew or should have known that it received a payment from Debtors within the preference period.  Both the disclosure statement and plan contain a clear statement of the trust's retention of the right to pursue avoidance actions postconfirmation.  Therefore, Defendant knew or should have known that the trustee could have commenced the instant action post confirmation and as such, Defendant cannot now claim that such action is barred. *Ampace*, 279 B.R. at 161.

81.     As in *Ampace*, Debtors here expressly reserved the right to pursue preference claims and the Movants cannot claim they were in the dark about the value of these potential claims. The Movants knew, or certainly should have known, what payments Plaintiffs made to them within 90 days of the petition date, and the value of those payments. The Movants had more than adequate notice that Plaintiffs may assert preference claims against them. Further, Plaintiffs' statements and actions unambiguously expressed and demonstrated their intent to preserve these avoidance actions. Thus, Plaintiffs have preserved these claims.[10]

## V.    CLAIMS UNDER $250,000.00 AND AGAINST FOREIGN DEFENDANTS WERE NOT ABANDONED

82.     In a variation on the argument that the preference claims have not been adequately preserved, certain Movants argue in error that claims against foreign suppliers and claims for less than $250,000 were abandoned by the Debtors. *See* Memorandum of Law of Affinia Group Defendants (07-02198), p.18. This argument is premised on statements contained in the First Extension Motion in which the Debtors sought "authority to abandon" preference actions, including any action in which "the aggregate value of transfers…is less than $250,000 in value," First Extension Motion ¶ 25, and "payments to foreign suppliers," *id*. ¶ 26. Although the Debtors sought and were granted authority to abandon certain categories of claims, they did not, in fact, ultimately elect to act on that authority in all instances. Indeed, the Debtors were consistent in their efforts to preserve the 177 preference actions that were recently unsealed and served. Accordingly, there is no basis to deem any preference action at issue in these Motions as abandoned.

---

[10]     *Kunica v. St. Jean Financial, Inc.*, 233 B.R. 46 (S.D.N.Y. 1999) is easily distinguished. Unlike *Kunica*, the Disclosure Statement here identified claims that have to be preserved. In addition, unlike in *Kunica*, the Disclosure Statement here did not contain a statement that no claims existed.

83.     "Abandonment is not a process to be taken lightly." *In re Chartschlaa*, 538 F.3d 116, 123 (2nd Cir. 2008). Defendants bear the burden of demonstrating that there is no material dispute concerning whether the bankruptcy trustee properly abandoned the causes of action. *Fedotov v. Peter T. Roach and Associates, P.C.*, 354 F. Supp. 2d 471, 476 (S.D.N.Y. 2005). "[A] trustee's intent to abandon an asset must be clear and unequivocal…Absent an unambiguous intent to abandon the estate property, the proposed abandonment is not effective." *Chartschlaa v. Nationwide Mut. Ins. Co.*, 538 F.3d at 123; *see also*, *Ayazi v. New York City Bd. of Educ.*, 315 Fed. Appx. 313, 314 (2d Cir. 2009) (trustee never expressly abandoned the claim, and abandonment as a matter of law never occurred because the defined procedural conditions were never met).

84.     Here, through the Preservation Motion, the Debtors sought and obtained the authority to abandon certain claims. The Preservation Order states that the "Debtors are authorized" to abandon certain claims, but does not itself deem those claims abandoned. Preservation Order ¶ 5. Similarly, the Disclosure Statement provided that the Debtors were "authorized (but not directed)" to abandon certain actions. Approximately forty days after entry of the Preservation Order, the Debtors filed preference complaints against all of the Movants, thereby manifesting clearly that the Debtors had no intent of acting on the authorization to abandon any of those claims. Thereafter, the Debtors continued to seek extensions of their time to serve the complaints. The Debtors filing of the complaints and other efforts to preserve them demonstrates an unambiguous intent not to abandon these claims. Accordingly, Defendants have not met their burden of proof to demonstrate that certain claims have been abandoned by the Debtors. To the contrary, the Debtors actions demonstrate that no such actions have been abandoned.

## VI.    MOVANTS' JUDICIAL ESTOPPEL ARGUMENTS ARE WITHOUT MERIT

85.    Several Movants have requested dismissal through judicial estoppel.  There is no reason to apply judicial estoppel here.

86.    Judicial estoppel, a doctrine seldom invoked by courts, prevents parties from asserting certain positions and subsequently adopting contrary positions.  *Young v. U.S. Dep't of Justice*, 882 F.2d 633, 639 (2d Cir. 1989).  A key requirement, however, is that the court must have relied on the party's earlier position.  *See id.*  Moreover, judicial estoppel is designed "to protect the court, not a party, from a party's chicanery."  *Loral Fairchild Corp. v. Matsushita Elec. Indus. Co., Ltd.*, 840 F. Supp. 211, 219 (E.D.N.Y. 1994); *see also Galerie Des Monnaise*, 55 B.R. at 226 ("Judicial estoppel is invoked . . . to prevent the party from playing fast and loose with the courts and to protect the essential integrity of the judicial process.").  "If the statements can be reconciled there is no occasion to apply an estoppel." *Simon v. Safelite Glass Corp.*, 128 F.3d 68, 73 (2d Cir. 1997).  Here, the Court consistently allowed the Debtors to preserve the actions at issue in these Motions and to extend the time to serve the complaints in those actions.  Thus, it is clear that the Court never construed any statement of the Debtors to mean that these actions had been abandoned, and never entered any order in reliance on a belief that these actions had been abandoned.

87.    The Movants requesting judicial estoppel point to a footnote that appears in both the First Extension Motion and the Second Extension Motion.  The footnote states:  "Of the five categories of claims listed by the Debtors on Exhibit 7.24 to the Plan, only the claims relating to Laneko Engineering Co., Wachovia Bank, National Association, Laneko Engineering Co. Inc., and their affiliates and subsidiaries are subject to the [Preservation Order]."  The Movants

misinterpret this footnote to mean that their avoidance actions were not subject to the Preservation Order.

88.     As an initial matter, none of the actions at issue in these Motions fits into "the five categories of claims listed by the Debtors on Exhibit 7.24 to the Plan."  Thus, the footnote in question is not a statement that pertains to any of these actions.

89.     Regardless, in the broader context of the Extension Motions generally, it is abundantly clear that the Debtors intended to preserve all of the adversary proceedings at issue in these Motions in the event that the Debtors did not timely emerge from chapter 11 under the Plan, which they did not.  Further, both the First and Second Extension Orders expressly extended the deadline for serving the complaints in all of the sealed adversary proceedings.  Both orders also provided that "[t]he Adversary Proceedings are listed by adversary proceeding number on Exhibit A attached hereto."  Exhibit A to both the First and Second Extension Orders includes the case numbers assigned to all of the actions against the Movants.  Thus, the Movants' argument that the Court relied upon a misstatement in a footnote in entering the First Extension Order and the Second Extension Order is implausible on its face.[11]

---

[11]     Certain Movants also claim that in the First and Second Extension Motions, the Debtors stated that they would only pursue the adversary proceedings listed on Exhibit 7.24 to the Plan. That argument, however, mischaracterizes the Debtor's actual representation: "***Under the Plan***, the Debtors will not retain any of the causes of action asserted in the Adversary Proceedings except those specifically listed on Exhibit 7.24 to the Plan." (Emphasis added) (Ex. J, First Extension Motion, pp. 7-8; Ex. L, Second Extension Motion, pp. 8-9).  What the Movants fail to acknowledge is that, with respect to all of the Debtors' adversary proceedings, the Debtors' intentions, as expressed in the above quoted statement, were expressly contingent upon the Debtors' emergence from chapter 11 under the Plan.  As this Court knows, the Plan collapsed; therefore, in prosecuting these actions against the Movants under the Modified Plan, the Debtors are not being inconsistent with their earlier representation.

## VII.     PLAINTIFFS' CLAIMS ARE NOT BARRED BY LACHES

90.     Certain of the Movants argue that the preference claims are barred by laches. This is not an argument that can properly be raised as a threshold motion. In any event, even if the Court were to consider the laches argument, it fails on the merits.

91.     Laches is an affirmative defense that requires a showing of both "(1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense." *Bolanos v. Norwegian Cruise Lines Ltd.*, No. 01-Civ. 4182, 2002 U.S. Dist. LEXIS 12227, *27 (S.D.N.Y. July 9, 2002) (quoting *Costello v. United States*, 365 U.S. 265, 282 (1961)).

92.     Here, the Movants' laches argument should be rejected because it is a fact-sensitive affirmative defense that depends upon facts outside the Complaints, and thus cannot properly be addressed on a motion to dismiss. Generally, "[d]ismissal of . . . claims on grounds of laches is [] inappropriate under Rule 8(c) of the Federal Rules of Civil Procedure. The defense of laches is an affirmative defense which 'properly should be raised in the defendant's answer and not upon a motion to dismiss.'" *State Farm Mut. Automobile Ins. Co. v. Kalika*, No. 04 cv 4631, 2006 U.S. Dist. LEXIS 97454, *23 (E.D.N.Y. Mar. 16, 2006) (quoting *Karlen v. N.Y. University*, 464 F. Supp. 704, 708 (S.D.N.Y. 1979); *see also John Wiley & Sons, Inc. v. Daniel*, No. 06 Civ. 13373, 2007 U.S. Dist. LEXIS 33412, *5, n2 (S.D.N.Y. April 30, 2007) (denying motion to dismiss where basis for motion was not one of the defenses permitted to be raised via motion under Fed. R. Civ. P. 12(b)(1)-(7)). The defense should be addressed, if at all "on a summary judgment motion (if the facts are not in dispute) or at trial." *Bolanos,* 2002 U.S. Dist. LEXIS 12227, *29-*31 (S.D.N.Y. July 9, 2002) (denying motion to dismiss on laches

grounds where, among other things, the alleged prejudice to the defendant was "not supported by any affidavit or other evidence, much less by the pleadings.").

93. In any event, as a matter of law, the Movants cannot satisfy the elements necessary to assert a laches defense. "It is well established that, as a general rule, laches is not a defense to an action filed within the applicable statute of limitations." *Astra USA, Inc.*, *v. Bildman*, 2010 U.S. App LEXIS 8991, *7 (2d Cir. April 30, 2010) (internal quotation marks and citations omitted). Here, there is no disputing that Plaintiffs filed the complaints in September of 2007, which preceded expiration of the applicable two-year limitations period on October 8 or October 14, 2007. As such, Movants cannot rely on laches to defeat Plaintiffs' claims. *See id.*

94. Finally, as already explained above in responding to Movants' due process argument, Movants have not established that they have suffered prejudice as a result of the court-authorized delay in serving the preference complaints.

## VIII. PLAINTIFFS' COMPLAINTS SHOULD NOT BE DISMISSED AS INADEQUATELY PLED

95. Certain Movants seek dismissal on the erroneous grounds that the complaints are insufficiently pled under Fed. R. Civ. P. 8(a)(2), as made applicable to these cases by Fed. R. Bankr. P. 7008. Under Rule 8(a)(2), "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." In determining whether a pleading is sufficient under Rule 8(a)(2), the Court must first accept "all of the factual allegations in the complaint as true." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). The court then must determine whether the complaint contains "sufficient factual matter . . . to state a claim to relief that is plausible on its face." *Id.* at 1950 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)).

96.     According to these Movants, Plaintiffs' preference claims are not "plausible" because they lack certain background information about the preferential transfers and Plaintiffs' underlying relationship with these Movants.  In particular, some of these Movants claim that Plaintiffs have failed to allege facts establishing (i) that each of the Movants was a creditor of the Plaintiffs, (ii) that the subject transfers were made on account of antecedent debt, or (iii) the identity of the transferor and transferee of each preferential payment.  *See, e.g.*, Affinia Motion, pp. 34-35.  In support of their argument, these Movants rely chiefly on an Eastern District of North Carolina bankruptcy case in which the court held that the Supreme Court's recent decisions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) heightened the pleading standard for preference actions.  *See, e.g.*, Affinia Motion, pp. 34-35; Hewlett Packard Motion, pp. 33-34 (citing, respectively, *Angell v. Haveri (In re Caremerica, Inc.)*, 409 B.R. 346 (Bankr. E.D.N.C. 2009), and *Angell v. Ber Care, Inc. (In re Caremerica Inc.)*, 409 B.R. 737 (Bankr. E.D.N.C. 2009)).  The court's various related opinions in that non-controlling case are inapposite because the complaints in *Caremerica* lacked key information that has been pled here; among other things, the *Caremerica* complaints "lack[ed] information as to the dates, amounts, and number of transfers."  409 B.R. at 351.

97.     Here, in contrast, there is no genuine question about the plausibility of the claims asserted by Plaintiffs.  Also, Plaintiffs' Complaints contain ample information to satisfy the pleading requirements of Rule 8(a)(2).  Among other things, they specify the legal basis for Plaintiffs' claim, as well as the Defendants to each adversary proceeding and the date, amount, and type (*e.g.*, check, EFT, etc.) of each transfer.  Such information is sufficient to provide these Movants with notice of Plaintiffs' claims and the grounds on which they rest.  *See generally Silverman v. H.I.L. Associates, Ltd. (In re Allou Distributors, Inc.),* 387 B.R. 365, 405 (Bankr.

E.D.N.Y. 2008) (preference claim that merely "repeat[ed] the statutory language of Section 547(b)" was sufficiently pled where it "identified each transfer by check number, date, and amount"); *Gold v. Winget (In re NM Holdings Co., LLC)*, 407 B.R. 232, 256 (Bankr. E.D. Mich. 2009) (rejecting heightened pleading standard in preference actions and noting that *Twombly* and *Iqbal* do not require "detailed factual allegations").

98.     In any event, to effectively moot this challenge to the sufficiency of the Complaints and facilitate the progress of these actions, Plaintiffs propose to voluntarily provide each Movant that has raised such a challenge with any additional information necessary to answer the Complaint within a court-ordered period of time following this Court's resolution of these Motions.  This process of providing additional, detailed information about the preference payments will ensure that these Movants have all of the information that they would otherwise be entitled to if they had prevailed on a motion for a more definite statement under Fed. R. Civ. P. 12(e).  Plaintiffs respectfully submit that, after receiving such supplemental information, no Movant will be left with any good faith basis to argue that it lacks information necessary to answer the Complaint against it. To the extent that any Movant believes such an argument to still be viable, it may renew its motion to dismiss on pleading grounds after receipt of the supplemental information.

## IX.     THE REMAINING ARGUMENTS ASSERTED BY MOVANTS LACK MERIT

### A.     THIS COURT HAS PERSONAL JURISDICTION OVER MOVANTS

99.     Movants Osar SRL, Hewlett Packard Mexico, S. de R.L. de C.V., HP Enterprise Services, HP Enterprise Services UK Ltd and Hewlett-Packard (Canada) Co. argue incorrectly – without attaching any affidavits or other supporting evidence – that the Court lacks personal jurisdiction over them because the allegations in Plaintiffs' respective Complaints fail to assert

sufficient facts supporting a *prima facie* showing of personal jurisdiction. As explained below, it is clear that this Court has personal jurisdiction over these Movants.

100. At the "pleading stage, prior to discovery, plaintiff is only required to make a *prima facie* showing of jurisdiction." *Energy Brands, Inc.* v. *Spiritual Brands, Inc.*, 571 F.Supp.2d 458, 464 (S.D.N.Y. 2008). A plaintiff must "plead facts which, if true, are sufficient in themselves to establish jurisdiction." *Id*. at 465. The pleadings, and all reasonable inferences that can be drawn from them, "shall be construed in a light most favorable to plaintiff as the non-moving party." *Id*. Significantly, "even a single, purposeful action directed at New York will be sufficient to confer personal jurisdiction over a defendant not physically present in New York, so long as that action bears a substantial relationship to the cause of action." *Id*. at 466 (*citing Corporate Campaign, Inc. v. Local 7837, United Paperworkers Int'l Union*, 265 A.D.2d 274, 697 N.Y.S.2d 37, 39 (1st Dep't 1999)).

101. Here, accepting the allegations in Plaintiffs' Complaints as true, and drawing all reasonable inferences from them, as the law requires, the Debtors made certain transfers, on specific dates and in specific amounts, to these Movants. These preference actions arise out of, and specifically relate to, these contacts between Movants and the Debtors, who were located in the United States. Thus, Plaintiffs have established a *prima facie* basis for exercising personal jurisdiction over these Movants. *See In re Picard v. Cohmad Securities Corp. (Bernard L. Madoff Investment Securities LLC),* 418 B.R. 75, 79 (Bank. S.D.N.Y. 2009) ("Where, as here, a foreign defendant has not consented to jurisdiction by filing a proof of claim in the bankruptcy case, the plaintiff must show that the foreign defendant has the requisite minimum contacts with the United States at large to satisfy Fifth Amendment due process."); *Application to Enforce Admin. Subpoenas Duces Tecum of S.E.C. v. Knowles,* 87 F.3d 413, 417 (10th Cir. 1996) ("When

the personal jurisdiction of a federal court is invoked based upon a federal statute providing for nationwide or worldwide service, the relevant inquiry is whether the respondent has had sufficient minimum contacts with the United States."); *GC Financial Svs., Inc. v. Lee (In re Protected Vehicles, Inc.)*, No. 08-007783, 2010 WL 2163283, at *3 (Bankr. D.S.C. May 28, 2010) ("In a bankruptcy case, personal jurisdiction over a foreign defendant exists when a defendant consents to jurisdiction by filing a proof of claim in the bankruptcy case or has sufficient minimum contacts with the United States to satisfy the Fifth Amendment's due process standard."). Significantly, "a single transaction with the [United States] will suffice." *Bernie L. Madoff Investment Securities*, 418 B.R. at 80.

### B. THE CLAIM AGAINST HP ENTERPRISE SERVICES UK LTD. SHOULD NOT BE DISMISSED FOR FAILURE TO SERVE

102.    HP Enterprise Services UK Ltd., formerly known as Electronic Data Systems Ltd., argues that the complaint should be dismissed against Electronic Data Systems Ltd. ("EDS Ltd.") because Plaintiffs did not seek further time to serve EDS Ltd. in their Emergency Motion for Order Extending Deadline to Serve Process for Certain Avoidance Actions. This argument should be rejected. EDS Ltd. received adequate notice of this action and has not been prejudiced because its affiliate, EDS Canada, Inc., a co-defendant in the same adversary proceeding, was served with the summons and complaint and has not challenged the sufficiency of service. Further, EDS Ltd. and EDS Canada, Inc., are represented by the same counsel. In similar circumstances, this Court has held that service of process was sufficient. *See, e.g., Itel Container Int'l Corp. v. Atlanttrafik Express Serv., Ltd.*, 686 F. Supp. 438, 444 (S.D.N.Y. 1988), *rev'd on other grounds*, 982 F.2d 765 (S. D. N. Y. 1992) (service on corporate affiliate deemed sufficient service); s*ee also Zenith Radio Corp. v. Matsushita Electrical Indus. Co., Ltd.*, 402 F. Supp. 262, 329 (S.D.N.Y. 1975) (service upon defendant's wholly-owned subsidiary adequate where

defendant received adequate notice of the suits and was not prejudiced by the manner of service).[12]

## C. THE MISSPELLING OF A PARTY'S NAME IS NOT GROUNDS TO DISMISS

103.    A-1 Specialized Services & Supplies, Inc. seeks to have the preference actions filed against A 1 Specialized Svc. and Supp. Inc. and A-1 Specialized Services dismissed because Plaintiff misspelled A-1 Specialized Services & Supplies, Inc.'s name on both Complaints.  A-1 Specialized Services & Supplies, Inc. received service of both Complaints and understood that it was the intended Defendant in both actions.

104.    "The failure to comply with the 'caption' requirement of Fed. R. Civ. P. 10(a) will be generally overlooked in the absence of prejudice, and at most will result in an order directing the party to amend the caption to add the missing name." *Family Golf Ctrs., Inc. v. Acushnet Co. (In re Randall's Island Family Golf Ctrs., Inc.)*, 290 B.R. 55, 62-63 (Bankr. S.D.N.Y. 2003); 2 James Wm. Moore, Moore's Federal Practice § 10.02[2][B], at 10-8 (3d ed. 2002).  If a party name needs to be amended after the statute of limitations period has expired, the amendment will relate back to the timely pleading and the court should grant leave to amend so long as the Defendant "knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity."  Fed. R. Civ. P. 15(c)(1)(C).  Defendant A-1 Specialized Services & Supplies, Inc. was not and does not claim to have been prejudiced by the misnomer.  A-1 Specialized Services & Supplies, Inc. received service of both Complaints

---

[12]    With respect to Movant KMI Liquidating LLC (07-02372), successor-by-merger to Kataman Metals, Inc. ("KMI"), which concedes having received actual notice of this action, to the extent that there are any service-related timing issues, Plaintiffs intend to move for relief under Fed. R. Civ. P. 4(m).  Noteworthy, however, is that KMI alleges to have received notice of this action two days after Plaintiffs' summons expired.

and was aware that both actions were brought against it despite the misnomer. Therefore, as there has been no prejudice, this Court should grant leave to Plaintiff to amend the captions in Adversary Proceeding 07-02084 and 07-02096 to reflect the Defendant's correct name "A-1 Specialized Services & Supplies, Inc."[13]

### D. PLAINTIFFS' CLAIM AGAINST AKS RECEIVABLES, LLC, SHOULD NOT BE DISMISSED MERELY BECAUSE THAT DEFENDANT HAS DISSOLVED

105. AKS Receivables, LLC ("AKS"), argues that Plaintiffs' complaint against it should be dismissed because AKS had dissolved and filed its certificate of cancellation with the Delaware Secretary of State several months before Plaintiffs filed suit. As such, AKS asserts that it was no longer capable of being sued. AKS Motion, p. 5. This argument should be rejected because Section 804(b)(3) of the Delaware Limited Liability Company Act (the "Delaware Act") permits plaintiffs to pursue assets of dissolved limited liability companies for up to ten years after dissolution. 6 Del. C. § 18-804(b)(3) ("A limited liability company which has dissolved[] . . . [s]hall make such provision as will be reasonably likely to be sufficient to provide compensation for claims that have not been made known to the limited liability company or that have not arisen but that, based on facts known to the limited liability company, are likely

---

[13]     Defendants ATS Automation Tooling Systems Inc., Doshi Prettl International, and Affinia Group Holdings, Inc. seek to dismiss certain defendants named in their respective actions for the reason that those defendants do not exist and never have existed.[13] *See* ATS Automation Tooling Systems Inc, Motion, pp. 2 and 34 (seeking to dismiss claims against "ATS Automation Tooling Sys.," "ATS Automation Tooling Systems," and "Automation Tooling Systems"); Doshi Prettl International, Motion, pp. 2 and 34 (seeking to dismiss claims against "Doshi Prettl Int."); Affinia Group Holdings, Inc., Motion p. 2, Brief in Support of Motion, p. 36 (seeking to dismiss claims against "Affinia," "Affinia Group," and "Affinia Canada"). Since the filing and service of these Complaints, Plaintiffs have determined that the claimed non-existing entities are in fact not legal entities, but rather pseudonyms for other named defendants. Accordingly, Plaintiffs stipulate to the dismissal of these non-entity/non-existent defendants.

to arise or to become known to the limited liability company within 10 years after the date of dissolution.").  Further, even when a limited liability company has filed a certificate of cancellation, as AKS claims to have done, Section 805 of the Delaware Act authorizes the "Court of Chancery . . . [to] appoint 1 or more of the managers of the limited liability company to be trustees, or appoint 1 or more persons to be receivers, of and for the limited liability company…*with the power to prosecute and defend, in the name of the limited liability company . . . all such suits as may be necessary or proper for the purposes aforesaid.... The powers of the trustees or receivers may be continued as long as the Court of Chancery shall think necessary for the purposes aforesaid.*"  6 Del. C. § 18-805 (emphasis added).

106.    Accordingly, a limited liability company's capacity to sue or be sued does not end definitively upon its members' decision to file a certificate of cancellation.  *See Kwon v. Yun*, 606 F. Supp. 2d 344, 367 (S.D.N.Y 2009) ("The case law cited by plaintiff does not . . . compel the conclusion that § 18-805 [of the Delaware Act] cannot be invoked to permit a dissolved LLC to pursue an unpaid debt.").  Rather, where a limited liability company fails to wind up its affairs in accordance with the Delaware Act (*e.g.*, by failing to set aside sufficient funds to satisfy the types of claims referenced in Section 804(b)(3) of the Delaware Act), a claimant may seek to nullify the entity's certificate of cancellation.  *See Metro Communication Corp. BVI v. Advanced Mobilecomm Technologies Inc.*, 854 A.2d 121, 139 (Del. Ch. 2004) (denying motion to dismiss in part where, "the complaint [pled] facts that support[ed] the inference that [the subject LLC] was wound up in contravention of the LLC Act, [thus] the complaint also [pled] facts that support[ed] an application to nullify the certificate of cancellation.").  Significantly, a plaintiff need not seek nullification before bringing its claims against the dissolved entity.  *Id.* at 140 n.27 ("[One of the defendants] . . . suggests that [the plaintiff] was required to bring a separate action

47

seeking to nullify [the defendant's] certificate of cancellation *before* it could bring this action. I see nothing in [the case cited by the defendant] or the relevant statute that would support such a requirement, which makes little sense as a matter of efficiency." (emphasis in original) (internal citation omitted)).

107. Here, as a result of Plaintiffs' underlying bankruptcy proceedings, AKS was on notice that Plaintiffs' preference claim was "likely to arise or to become known to [AKS] within 10 years after the date of dissolution." *See* 6 Del. C. § 18-804(b)(3). Thus, either (1) AKS set aside a reasonable amount necessary to satisfy Plaintiffs' claim and Plaintiffs are entitled to pursue that amount, or (2) AKS failed to set aside an amount reasonably necessary to satisfy Plaintiffs' claim, and Plaintiffs are entitled to seek nullification of AKS' certificate of cancellation and pursue AKS for their claim. In either case, unresolved factual issues preclude the dismissal of Plaintiffs' complaint at this stage. *See Thor Merrit Square, LLC v. Bayview Malls LLC*, __ A.2d __, No. 4480-VCP, 2010 Del. Ch. LEXIS 52 (Del. Ch. Mar. 5, 2010) (denying motion to dismiss nullification claim based on factual questions as to whether LLC made reasonable provision for payment of debts under Section 804(b)(3) of the Delaware Act); *Resort Point Custom Homes, LLC v. Tait*, __A.2d __, No. S0C-04-020-ESB, 2010 Del. Super. LEXIS 144 (Del. Super. Ct. Apr. 7, 2010) (whether dissolved limited liability company's distribution of assets violated Section 804 of the Delaware Act had to be decided at trial).

## E. ROTOR COATERS INTERNATIONAL'S SETOFF/RECOUPMENT ARGUMENT SHOULD BE DENIED

108. In addition to joining in arguments advanced by others, Movant Rotor Coaters International ("RCI") (07-02767) also argues that "Plaintiffs cannot satisfy the requirements of 11 U.S.C. § 547(b)(5) because the Alleged Preference Transfers did not permit RCI to receive

more than it would have received under Chapter 7." (RCI Joinder, p.5). RCI provides no factual support for the above quoted argument, which plainly raises fact issues to be explored in discovery and is not an argument that can be resolved on the pleadings. Accordingly, this argument should be denied.

### F. AURAMET TRADING'S 546(e) ARGUMENT SHOULD BE REJECTED

109. Auramet Trading, LLC ("Auramet") (07-02130) argues that Plaintiffs avoidance claims are barred by 11 U.S.C. § 546(e), because it is a commodities and forward contract broker, and the transfers at issue in the Complaint were commodities–related, involving certain metals. Establishing whether the transfers at issue qualify as settlement payments made by or to a forward contract merchant is an exercise that is a fact issue that cannot properly be resolved at this stage of the case without the opportunity for discovery.

110. In order to satisfy 11 U.S.C. § 546(e), Auramet must show whether the transfers at issue constituted settlement payments and whether such transfer was made to Auramet in its capacity as a commodity broker or as a forward contract merchant. *See, e.g., Hays v. Morgan Stanley DW Inc. (In re Stewart Finance Co.)*, 367 B.R. 909, 920-21 (Bankr. M.D. Ga. 2007) (noting that defendant bears the burden of proof concerning the applicability of 11 U.S.C. § 546(e) as a bar to avoidance). Once such capacity is shown, other considerations, such as the contract terms, will indicate whether, in fact, the transfer is barred by 11 U.S.C. § 546(e). These are not issues ripe for adjudication on the insufficient record currently before this Court, particularly since there are fact disputes between the parties as to whether or not these transfers were governed by a master agreement.[14]

---

[14] Auramet further argues that of the twelve transfers alleged, five are duplicates and one never occurred, leaving six transfers remaining. Based on Plaintiffs' review of their records,

## G.     MOVANTS' REQUEST FOR ATTORNEY'S FEES IS BASELESS

111.     Movants Norilsk Nickel USA, Inc.[15] and Autocam Corporation[16] seek attorney's fees and costs associated with the filing of their respective motion to dismiss.  In a bankruptcy case, an award of attorney's fees and costs is limited to when the court determines that the litigant has acted in bad faith or has asserted a frivolous claim or continues a frivolous action.[17] *R & J Ventures, Inc. v. Gentile (In re R & J Ventures, Inc.)*, No. 07-61462, 2007 Bankr. LEXIS 4109, at *13-14 (Bankr. N.D.N.Y. Dec. 4, 2007), aff'd sub nom., *Nash v. Gentile*, No. 6:08-cv-006, 2008 U.S. Dist. LEXIS 60168 (N.D.N.Y. Aug. 6, 2008); *In re Volpe*, No. 98 Civ. 8901, 1999 U.S. Dist. LEXIS 2870, at *15 (S.D.N.Y. March 15, 1999).  Bad faith is demonstrated by "clear evidence that an action was commenced or continued in bad faith, vexatiously, wantonly, or for oppressive reasons."  *In re R & J Ventures, Inc.*, 2007 Bankr. LEXIS 4109, at *13 quoting *Oliveri v. Thompson,* 803 F.2d 1265, 1271 (2d Cir. 1986).  Neither Defendant Norilsk nor Defendant Autocam have provided this Court with any evidence that Plaintiff acted in bad faith by filing and serving the preference complaints in accordance with the Orders entered by this Court.  Accordingly, the request for attorney's fees and costs should be denied.[18]

---

Plaintiffs agree that the Complaint against Auramet requires amendment to correct certain factual inaccuracies concerning the transfers at issue.  Plaintiffs plan to discuss a consensual amendment of the Complaint with Auramet; and, alternatively, will seek leave to amend.

[15]     *See* Brief in Support of Motion to Dismiss filed by Norilsk Nickel USA, Inc. (07-02433), p. 35.

[16]     *See* Motion to Dismiss filed by Autocam Corporation (07-02135), p. 2.

[17]     In a bankruptcy case, payment of attorney's fees can be assessed under (1) the court's inherent power or (2) 28 U.S.C. § 1927.  Both require a showing of bad faith.  *In re Volpe*, No. 98 Civ. 8901, 1999 U.S. Dist. LEXIS 2870, at *13-15 (S.D.N.Y. March 15, 1999).

[18]     To the extent that any Movants have raised additional fact-sensitive affirmative defenses, such affirmative defenses are not a proper basis for a motion to dismiss because they do not

**CONCLUSION**

112.    For the reasons set forth above, Plaintiffs respectfully request that this Court deny

the Motions and grant Plaintiffs such other relief as the Court deems just and proper.

Dated:  New York, New York
            June 7, 2010

                                        Respectfully submitted,

                                        BUTZEL LONG,
                                        a professional corporation


                                        By:  /s/ Eric B. Fisher
                                              Barry N. Seidel
                                              Eric B. Fisher
                                              Cynthia J. Haffey
                                              Donald V. Orlandoni
                                        380 Madison Avenue, 22nd Floor
                                        New York, New York 10017
                                        Telephone:  (212) 374-5359
                                        Facsimile:  (212) 818-0494
                                        fishere@butzel.com

---

clearly appear on the face of Plaintiffs' Complaints.  *Friedl v. City of New York*, 210 F.3d 79, 83
(2d Cir. 2000) ("[A] district court errs when it considers affidavits and exhibits submitted by
defendants, or relies on factual allegations contained in legal briefs or memoranda, in ruling on a
12(b)(6) motion to dismiss.  Vacatur is required even where the court's ruling simply makes a
connection not established by the complaint alone or contains an unexplained reference that
raises the possibility that it improperly relied on matters outside the pleading in granting the
defendant's motion." (internal quotation marks and citations omitted)); *see also John Wiley &
Sons, Inc. v. Daniel*, No. 06 Civ. 13373, 2007 U.S. Dist. LEXIS 33412, at *5 n.2 (S.D.N.Y. April
30, 2007) (denying motion to dismiss where basis for motion was not one of the defenses
permitted to be raised via motion under Fed. R. Civ. P. 12(b)(1)-(7)).

BUTZEL LONG, a professional corporation
Eric B. Fisher
Barry N. Seidel
Cynthia J. Haffey
Donald V. Orlandoni
380 Madison Avenue, 22nd Floor
New York, New York 10017
Telephone:  (212) 374-5359
Facsimile:  (212) 818-0494
fishere@butzel.com

*Attorneys for Plaintiffs*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DPH Holdings Corp., *et al.*,<br><br>        Reorganized Debtors. | Chapter 11<br><br>Case No. 05-44481 (RDD)<br>(Jointly Administered) |

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 7, 2010, a true and correct copy of Plaintiff's Omnibus  Response to Motions Seeking, Among Other Forms of Relief, Orders To Vacate Certain Procedural Orders Previously Entered By This Court and To Dismiss The Avoidance Actions Against the Moving Defendants, was served electronically through the Court's ECF system to the following Defendants in the attached service list:

Dated: Detroit, Michigan

      June 7, 2010

/s/ Alexis Richards____

Alexis Richards

| CASE NO. | DEFENDANT |
|---|---|
| 07-02084 | A 1 Specialized SVC & Supp., Inc. |
| 07-02096 | A-1 Specialized Services |
| 07-02142 | Access One Technology |
| 07-02198 | Affinia Group Holdings Inc., |
| 07-02076 | Ahuas Tool & Engineering Inc. |
| 07-02140 | AKS Receivables LLC, AKS and AKS Receivables |
| 07-02201 | Ambrake Corporation and Ambrake Corp. |
| 07-02125 | ATS Automation Tooling Systems Inc., ATS Automation Tooling Sys., ATS Automation Tooling Systems, and Automation Tooling Systems |
| 07-02130 | Auramet Trading LLC |
| 07-02135 | Auto Camm |
| 07-02182 | Barnes & Associates |
| 07-02259 | Blair Strip Steel Co. |
| 07-02800 | Bosch and Robert Bosche GMBH |
| 07-02270 | BP, BP Amoco Corp., BP Microsystems Inc., BP Products North America Castrol, Castrol Industrial and Unifrax Corp. |
| 07-02282 | Calsonic Corp., Calsonic N. America Inc., and Calsonic North America, Inc. |
| 07-02291 | Carlisle and Carlisle Companies, Inc. |
| 07-02177 | Corning Inc., Corning Incorporated, and Corning |
| 07-02188 | Critech Research Inc. |
| 07-02217 | D&S Machine Products Inc. |
| 07-02250 | Danobat Machine Tool Co. Inc. |
| 07-02098 | Decatur Plastic Products Inc. |
| 07-02211 | Doshi Prettl International and Doshi Prettl Int. |
| 07-02236 | DSSI and DSSI LLC |

| | |
|---|---|
| 07-02242 | Dupont Company, Dupont Co., Dupont Electronic Matrls. Inc., Dupont P&E M Co., Dupont Powder Coatings, Dupont Powder Coatings USA Inc., E I Dupont De Nemours, EI Dupont De Nemours & Co. Inc., and Dupont E I DE Nemours Inc. |
| 07-02256 | Eco-Bat America LLC |
| 07-02262 | EDS, EDS Corp., Electronic Data Systems, Electronic Data Systems Corp., Electronic Data Systems DE, Electronic Data Systems LTD., and EDS Canada Inc. |
| 07-02337 | Ex Cell O Machine Tools Inc. |
| 07-02350 | FA Tech Corp. |
| 07-02274 | Fin Machine Co. LTD |
| 07-02302 | Florida Production Engineering Inc. and Florida Production Eng. |
| 07-02328 | GKN Sintermetals |
| 07-02333 | Globe Motors Inc. and Globe Motors |
| 07-02295 | Invotec Engineering and Invotec Engineering Inc. |
| 07-02449 | Hewlett Packard, Hewlett Packard Co. Inc., Hewlett Packard Company, Hewlett Packard Limited, Hewlett Packard Mexicos, Hewlett-Packard Company, and Hewlett-Packard Financial SVCS. |
| 07-02525 | Intec Group |
| 07-02295 | Invotec Engineering and Invotec Engineering Inc. |
| 07-02301 | ISI of Indiana Inc. |
| 07-02348 | Johnson Controls, Johnson Controls Battery Group, Johnson Controls GmbH & Co. KG, and Johnson Controls, Inc. |
| 07-02372 | Kataman, Kataman Metals, Kataman Metals Inc., and Kataman Metals |
| 07-02723 | LDI Incorporated |
| 07-02753 | Macsteel |
| 07-02436 | Microchip |
| 07-02466 | MJ Celco and MJ Celco Inc. |
| 07-02743 | M&Q Plastic Products, and M and Q Plastic Products |

| | |
|---|---|
| 07-02477 | Monroe Inc. |
| 07-02484 | MSX, MSX International, and MSX International Inc. |
| 07-02489 | Mubea, and Mubea Inc. |
| 07-02500 | Multitronics Inc. |
| 07-02541 | NGK, NGK Automtive Ceramics, NGK Automotive Ceramics USA Inc., and NGK Spark Plug Mfg. (USA) Inc. |
| 07-02414 | Niles USA, Inc. and Niles USA |
| 07-02433 | Norilsk Nickel USA Inc., and Norilsk Nickel USA |
| 07-02479 | Olin Corp. |
| 07-02799 | Osar SRL |
| 07-02540 | Owens Corning |
| 07-02563 | Park Ohio Industries, and Park Ohio Industries Inc. |
| 07-02580 | Philips Semiconductor, Philips Semiconductors, and Philips Semiconductors Inc. |
| 07-02287 | Plasco and Plasco Inc. |
| 07-02690 | Pro Tech Machine |
| 07-02702 | Prudential Relocation, Prudential Relocation, Inc., and Prudential Relocation Int'l |
| 07-02737 | Regions Bank Birmingham |
| 07-02744 | Republic Engineered Products, Republic Eng. Products, and Republic Engineered |
| 07-02750 | Rieck Group LLC |
| 07-02767 | Rotor Coaters International |
| 07-02768 | RSR Corporation, RSR, and RSR Corp. |
| 07-02769 | RSR/Ecobat |
| 07-02618 | Select Tool & Die Corp. |
| 07-02619 | Setech Inc. and Setech |
| 07-02623 | Shuert Industries Inc. |

| | |
|---|---|
| 07-02639 | Spartech Polycom |
| 07-02654 | Stephenson & Sons Roofing |
| 07-02659 | Sumitomo, Sumitomo Corp. of America, Sumitomo Corporation, Sumitomo Electric Wiring, Sumitomo Plastics America, Sumitomo Plastics America Inc., Sumitomo Sitix Silicon Inc., and Sumitomo Wiring Systems Inc. |
| 07-02661 | Summit Polymers Inc. |
| 07-02668 | Tata America Intn'l. Corp. |
| 07-02672 | Tech Central |
| 07-02688 | Timken, Timken Company, Timken Corporation, Timken France SAS, and Timken Super Precision |
| 07-02790 | Tyco, Tyco Adhesives, Tyco Electronics-Raychem, Tyco Electronics Corp., Tyco Electronics Corporation, Tyco Electronics Identification, Tyco Electronics Logistics AG, and Tyco/Electronics |
| 07-02505 | Universal Tool & engineering, Universal Tool & Engineering C, and Universal Tool & Engr. Co. |
| 07-02534 | Valeo, Valeo Airflow Division, Valeo Climate Control USA, Valeo Electrical Systems, Valeo Electronics NA, Valeo, Inc., Valeo Schalter UND Sensoren, and Valeo Wiper Systems & Electric Motors North America |
| 07-02539 | Vanguard Distributors Inc. |
| 07-02551 | Victory Packaging and Victory Packing LP |
| 07-02556 | Vishay Americas Inc. |
| 07-02581 | Wagner Smith Company |
| 07-02597 | Wells Fargo Business and Wells Fargo Minnesota |
| 07-02606 | Williams Advanced Materials EF |